(No. 44870.—

RUSSELL WISE, Appellant, v. THE INDUSTRIAL COM-MISSION *et al.*—(Checker Taxi Co., Appellee.)

*Opinion filed April 2, 1973.*

MURGES and JOHNSON, and JOSEPH L. GOLD-BERG, both of Chicago (GEORGE J. MURGES and PHILIP J. JOHNSON, of counsel), for appellant.

KANE DOY & HARRINGTON, of Chicago (ARTHUR O. KANE, of counsel), for appellee.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Claimant, Russell Wise, filed an application for adjustment of claim with the Industrial Commission seeking compensation from his employer, Checker Taxi Company (hereinafter Checker). The arbitrator denied relief, finding that claimant's injuries did not arise out of and in the course of his employment. The Commission affirmed and on writ of *certiorari* to the circuit court of Cook County the Commission's order was confirmed. Claimant has appealed to this court. The only issue we need consider is whether the finding was contrary to the manifest weight of the evidence.

Claimant was a full-time employee of the Federal government. However, he would also work several evenings a week as a cab driver for Checker. The circumstances upon which the claim was based occurred during the early morning hours of September 3, 1966.

Jeff Jackson, a longtime acquaintance of claimant, testified that he brought claimant's wife to a birthday party that evening. As Jackson arrived he saw a group of

teenagers standing near the street corner. Shortly after midnight claimant appeared and stayed for an hour or more and then left. About 15 minutes later Jackson heard claimant screaming as the latter stood in front of the house where the party was being held. Jackson said that the party hostess, Catherine MacDonald, went outside. He followed and saw claimant and Mrs. MacDonald going toward claimant's taxicab, which was parked at the corner with the engine hood open. Jackson sat in the front seat of the vehicle and for several minutes futilely attempted to start it with the key which was in the ignition. He said that claimant, whom he described as bleeding, was in the back seat with Mrs. MacDonald. The police were called and claimant was taken to the hospital.

On cross-examination this witness said that claimant and Mrs. MacDonald entered the vehicle about 2:30 or 3:00 A.M. He further stated that he left the keys in the vehicle after his unsuccessful effort to start it.

Catherine MacDonald, claimant's cousin, testified that claimant had arrived at her party about midnight. After consuming several cans of beer and some champagne, he departed about 2:00 A.M. This witness stated she saw claimant about 10 minutes later as he stood in front of her house screaming for someone to take him to the hospital. Mrs. MacDonald went outside and claimant told her, "Some teenage punks done got me down there." Claimant was bleeding from a neck wound and this witness attempted to administer aid to him after placing him in the back seat of the cab. She corroborated Jackson's testimony as to the location of the vehicle, the fact that the engine hood was open and that Jackson could not start the cab.

Claimant's wife testified that on September 2, 1966, claimant left their house about 5:20 P.M. She received a telephone call from him at 9:30 P.M., and he said he was at his cousin's house but the party had not yet started. She next saw him about 1:00 A.M. at the party where she

confirmed the fact that he had several drinks. She estimated that he stayed at the party about 1 to 1½ hours. As claimant was leaving she spoke to him briefly, and he told her that he was going to pick up several more fares and then return the vehicle to Checker. During this conversation she said that she saw several teenagers standing on the corner. The remainder of her testimony was similar to that of the previous witnesses.

Claimant appeared before the arbitrator but was unable to testify. A stroke had partially paralyzed him and caused his loss of speech (aphasia). Medical testimony indicated that claimant's present condition was causally related to the attack, which had resulted in damage to the left internal carotid artery.

Julian Siewrog, a garage superintendent for Checker, testified that claimant's vehicle was towed to the garage after the assault. He claimed that he checked the cab and found nothing wrong with it. He also said that company policy prohibited drivers from using the vehicles for personal matters and from drinking while on duty.

Eliza Jones, a tow-truck driver for Checker, testified on review before the Commission. He stated that he received a radio message to bring claimant's vehicle to the garage and arrived at the scene of the assault about 3:30 A.M. that day. He said that the vehicle was parked at the corner and the engine hood was closed. He further testified that he could not find the ignition key; however, he was immediately able to start the vehicle by using his "master" key. He said that there was nothing wrong with the cab.

In the present case claimant argues that an employee may perform acts which are for his personal comfort and such acts will be considered merely incidental to his employment. (*Hunter Packing Co. v. Industrial Com., 1 Ill.2d 99.*) As such, he concludes that his attendance at the party might be construed as a minor interlude and would not be considered a deviation from his employment. We cannot agree with this position. We believe that the extent

of the deviation here removes him from the course of his employment.

However, claimant contends that even if his presence at the party amounted to a deviation, his subsequent return to the vehicle and his attempt to start it evidenced his return to the course of his employment. Moreover, he maintains that as a cab driver it might be reasonable to infer that he was a "target" for an assault and robbery because it is common knowledge that those engaged in such occupation carry money. Thus he concludes that his injuries arose out of and in the course of his employment.

An injury "arises out of" employment when it originates from some risk related to the employment, thereby establishing a causal connection between the injury and the occupation. (*Material Service Corp. v. Industrial Com., 53 Ill.2d 429; Thurber v. Industrial Com., 49 Ill.2d 561.*) A compensable injury occurs "in the course of" employment when it is sustained while a claimant is at work or while he performs reasonable activities in conjunction with his employment. (*Hydro-Line Manfacturing Co. v. Industrial Com., 15 Ill.2d 156; Associated Vendors, Inc. v. Industrial Com., 45 Ill.2d 203.*) To sustain an award, both of the aforementioned elements must be proved (*Loyola University v. Industrial Com., 408 Ill. 139*), and the burden of establishing these components is upon the claimant. (*Revere Paint & Varnish Corp. v. Industrial Com., 41 Ill.2d 59.*) Such proof necessarily poses a factual evaluation which is to be made by the Commission, and its determination will not be set aside unless it is clearly contrary to the manifest weight of the evidence. *Eyzen v. Industrial Com., 46 Ill.2d 488.*

Claimant's contention that he had returned to his cab and had resumed his employment was primarily predicated upon testimony that the engine hood was open, that the key was in the ignition and that Jackson could not start the vehicle. However, there was evidence which detracted from this position, for shortly after claimant was attacked

the cab was inspected by another employee, who ascertained that the hood was closed and the ignition key could not be found. This witness also encountered no difficulty in starting the vehicle, which was later determined to be operable after examination at the garage. Moreover, there was no evidence of robbery, nor was any proof forthcoming which might establish that claimant's occupation subjected him to a greater risk than that which might be sustained by any other person under the circumstances.

After review of the record, we cannot say that the Commission's factual evaluation and the reasonable inferences which might have been drawn therefrom render its decision contrary to the manifest weight of the evidence. Accordingly, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*