NABISCO BRANDS, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (John J. Prendergast, Jr., Appellee).

First District (Industrial Commission Division)   No. 1—93—2970WC

Opinion filed August 12, 1994.—Rehearing denied October 18, 1994.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Robert Maciorowski and Marya Savich, of counsel), for appellant.

McNeela & Griffin, Ltd., of Chicago (Cornelius F. Riordan and Michael A. Alesia, of counsel), for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, John J. Prendergast, Jr., sought benefits pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*) for injuries to his back allegedly sustained on April 2, 1987, while working for Nabisco Brands, Inc., employer. The arbitrator concluded claimant had proved his injuries arose out of and in the course of his employment and, accordingly, awarded him temporary total disability benefits for a period of $20^5/_7$ weeks and medical and surgical expenses totalling approximately $13,758. On review, the Industrial Commission (Commission) reversed the decision of the arbitrator determining that claimant failed to prove he was exposed to a risk greater than the general public when the accident occurred. The circuit court of Cook County, however, reversed the Commission and remanded the matter for further proceedings finding the Commission's determination was, as a matter of law, against the manifest weight of the evidence. After hearing the case on remand, two of the three-member panel of Commissioners affirmed and adopted the decision of the arbitrator. This time, the circuit court confirmed the Commission's decision. Employer appeals from both circuit court decisions and from the Commission's second

decision. Employer argues the findings that claimant proved the accidental injuries he sustained on April 2, 1987, arose out of his employment and that his condition of ill-being is causally related to the accident are against the manifest weight of the evidence. Employer also contends the findings that claimant had not exceeded his choice of medical providers and that the medical and surgical expenses incurred were reasonable and necessary are against the manifest weight of the evidence. Employer further asserts in its reply brief that claimant's brief was not timely filed and therefore should not be considered. We affirm.

On April 2, 1987, claimant, a maintenance machinist, was working on the bake floor at employer's plant. As part of his duties, claimant needed to leave the bake floor to retrieve bakery knives from the tool crib. Claimant retrieved three steel-plated knives measuring 39 inches by 6 inches which together weighed some 50 pounds. As he returned from the tool crib by descending a flight of stairs, claimant fell flat on the stairway, landing on his elbows and dropping the knives on his chest. Claimant testified that as he turned down the landing to go down the second set of stairs, his feet went out from him. He did not know if anything was on the stairs at the time of his fall. Claimant immediately experienced pain in his neck and back and was taken by ambulance to Christ Hospital. After being treated at the emergency room, he was released.

Between April 2, 1987, and October 5, 1989, claimant was seen by at least seven physicians and one chiropractor for the injuries he sustained in the accident. The first two doctors were part-time staff physicians at employer's plant. They diagnosed a sprain and recommended physical therapy. Claimant next saw Dr. Marshall Matz at employer's request. Dr. Matz also concluded claimant's complaints were minor in nature being consistent with a mild musculoskeletal injury, either a sprain or strain. Claimant, however, continued to experience pain in his neck and back, sometimes radiating into his shoulders, when extending his arms, looking up and down, playing golf, swimming or water skiing. Claimant then went to a series of doctors of his own choosing and their referrals, concluding with Dr. George Miz.

An MRI taken in November 1987 revealed a possible herniated disc at C5-C6. On October 5, 1988, claimant underwent an anterior cervical discectomy and fusion. Claimant returned to light duty work on February 27, 1989, and was released by Dr. Miz to return to full duty work on April 10, 1989. All of the doctors agreed claimant sustained an injury to his cervical spine as a result of the April 2, 1987, accident. They disagree, however, as to the extent of that injury.

■ We begin with employer's contention that claimant's brief should not be considered on appeal because it was untimely filed. As this contention has been raised by reply brief only, and not by any formal motion to strike, we choose to ignore employer's request.

■ Turning to the merits, we initially point out that an employee bears the burden of proof to establish the elements of his right to compensation. (*Board of Trustees of the University of Illinois v. Industrial Comm'n* (1969), 44 Ill. 2d 207, 214, 254 N.E.2d 522, 526; *Hansel & Gretel Day Care Center v. Industrial Comm'n* (1991), 215 Ill. App. 3d 284, 294, 574 N.E.2d 1244, 1251.) In order for accidental injuries to be compensable under the Act, a claimant must show such injuries arose out of and in the course of his or her employment. (*Caterpillar Tractor Co. v. Industrial Comm'n* (1989), 129 Ill. 2d 52, 57, 541 N.E.2d 665, 667; *Hammel v. Industrial Comm'n* (1993), 253 Ill. App. 3d 900, 902, 626 N.E.2d 234, 236; *Lubin Management Co. v. Industrial Comm'n* (1990), 200 Ill. App. 3d 432, 435, 558 N.E.2d 189, 191.) For an injury to arise out of one's employment, it must have an origin in some risk connected with or incidental to the employment so that there is a causal connection between the employment and the injury. (*Lubin*, 200 Ill. App. 3d at 435, 558 N.E.2d at 191; *Hopkins v. Industrial Comm'n* (1990), 196 Ill. App. 3d 347, 350, 553 N.E.2d 732, 733-34.) Typically, an injury arises out of one's employment if, at the time of the occurrence, the employee was performing acts he or she was instructed to perform by the employer, acts which he or she had a common law or statutory duty to perform, or acts which the employee might reasonably be expected to perform incident to his or her assigned duties. (*Caterpillar Tractor*, 129 Ill. 2d at 58, 541 N.E.2d at 667; *Hopkins*, 196 Ill. App. 3d at 350, 553 N.E.2d at 734.) An injury which results from a hazard to which the employee would have been equally exposed apart from the employment or a risk purely personal to the employee, however, is not compensable. (*Caterpillar Tractor*, 129 Ill. 2d at 59, 541 N.E.2d at 667; *Orsini v. Industrial Comm'n* (1987), 117 Ill. 2d 38, 45, 509 N.E.2d 1005, 1008-09.) An idiopathic fall, resulting from an internal, personal origin, is just such an accident. (*Elliot v. Industrial Comm'n* (1987), 153 Ill. App. 3d 238, 242, 505 N.E.2d 1062, 1065; *Oldham v. Industrial Comm'n* (1985), 139 Ill. App. 3d 594, 596, 487 N.E.2d 693, 695.) Unexplained falls, resulting from a neutral origin, on the other hand, are compensable. (See *Chicago Tribune Co. v. Industrial Comm'n* (1985), 136 Ill. App. 3d 260, 263-64, 483 N.E.2d 327, 329.) Idiopathic falls may be compensable, however, if the employment significantly contributed to the injury by placing the employee in a position increasing the dangerous effects of the fall. (*Elliot*, 153 Ill. App. 3d at 244, 505 N.E.2d at 1066-

67.) Under any of these standards, claimant's accident here clearly was compensable, notwithstanding the Commission's original determination to the contrary.

■ In this instance, claimant slipped on employer's stairs while carrying bakery knives. Claimant was performing an act he was required to do in fulfilling the duties of his employment. It is true there was no evidence of the stairs being defective or of anything being on the stairs to cause claimant's fall. It is also true the act of walking down stairs at employer's place of business by itself does not establish a risk greater than those faced outside the work place. (See *Elliot*, 153 Ill. App. 3d at 244, 505 N.E.2d at 1067.) And, the need to walk down stairs certainly is not unique to claimant's employment. What was unique, however, was the need to carry three bakery knives, three knives which together weighed some 50 pounds and were over a yard in length. Even if the fall were purely idiopathic in nature, the knives greatly increased the dangerous effects of the fall. The knives hit claimant in the chest, increasing the impact of his fall on the stairs. The sequence of events resulted in a hyperflexion of claimant's neck and the immediate onset of pain in his neck and back. The risks inherent in carrying such knives can only lead to the conclusion claimant's accident arose out of and in the course of his employment.

The evidence further reveals claimant established a causal connection between his condition of ill-being and the accident at work on April 2, 1987. The medical evidence supports the fact that claimant sustained an injury to his neck and back as a result of the accident. None of the doctors claimant saw, including those working for employer, ruled out the accident as a cause of claimant's injuries. More specifically, none of the doctors testified that any episodes of water-skiing, golf or swimming were independent, intervening causes of claimant's herniated disc. Dr. Miz, on the other hand, opined that the April 2, 1987, accident caused the herniated disc. The various histories taken by all of the doctors, which related pain waxing with physical exertion and waning with rest, were consistent with Dr. Miz's opinion. Dr. Miz also stated symptoms indicative of a herniated disc evolve over time, a statement not disputed by any of employer's physicians. Claimant's second doctor of choice opined that none of claimant's recreational activities changed a sprain to a herniated disc because claimant's symptoms from the time of the accident were basically the same and had not dramatically changed. The pain experienced by claimant as a result of the accident was intensified, not precipitated, by subsequent physical activity. As employer is liable for all injuries and disabilities directly traceable to an

accidental injury absent any independent intervening causes to breach the chain (see *Crow's Hybrid Corn Co. v. Industrial Comm'n* (1978), 72 Ill. 2d 168, 178, 380 N.E.2d 777, 781), claimant proved he was entitled to benefits for his subsequent condition of ill-being.

■ Employer next contends claimant exceeded his choice of medical providers under the Act; consequently, employer believes it is not responsible for any expenses connected with treatment given by Dr. Miz, claimant's third doctor of choice. Employer additionally contends the charges for Dr. Miz's services were unreasonable and unnecessary.

Section 8(a) of the Act provides that an employer is obligated to pay all medical, surgical and hospital services provided by any first or second physician chosen by the employee. The employer also is responsible for any expenses pertaining to referrals from either the first or second choice of physicians. Employer believes Dr. Miz was claimant's third choice of doctor, and not a referral from his second choice, based upon a copy of a medical report it received from claimant's second doctor. The controversy stems from the March 2, 1988, entry of the report. The original entry for this date as sent to employer allegedly did not contain a second paragraph in which the referral to Dr. Miz was made. The referring doctor and his secretary both testified the first part of the report was transcribed on one day and the second part a day or two later. The first part was sent out after being transcribed, the secretary not realizing she had not completely transcribed all of the doctor's notes pertaining to claimant. The secretary further testified she did not know if the second part once transcribed was mailed to employer. Employer, however, did not raise the third choice issue until claimant underwent surgery and after paying one of Dr. Miz's bills. The arbitrator and ultimately the Commission concluded that the secretary's testimony was credible and that no attempt to "defraud" employer had been made. As the Commission is to resolve disputed questions of fact and judge the credibility of witnesses (*Caterpillar Tractor Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 35, 43, 454 N.E.2d 252, 256), we will not disturb this conclusion under the circumstances presented here.

■ With respect to employer's claim that Dr. Miz's charges were unreasonable, the Commission determined the charges were justified. We find no error.

It is true that a standard of reasonableness is to be applied to issues regarding the amount an employer is required to pay for medical expenses. (See *General Tire & Rubber Co. v. Industrial Comm'n* (1991), 221 Ill. App. 3d 641, 650, 582 N.E.2d 744, 750.) The

proper standard is that which is usual and customary for similar services in the community where the services were rendered. (221 Ill. App. 3d at 650, 582 N.E.2d at 750.) Testimony from one of employer's doctors as to what he usually charges for the same services Dr. Miz rendered claimant does not establish what is reasonable in the community. Moreover, while employer's doctor generally does not use an assistant, the hospital at which claimant's surgery was performed specifically requires the presence of an assistant for the type of surgery claimant underwent. We therefore cannot say the Commission's conclusion that the charges were not unreasonable or unnecessary is against the manifest weight of the evidence.

■ For its last point on appeal, employer asserts claimant's temporary total disability benefits should have been limited to $18^5/7$ weeks based on the time two of employer's doctors allegedly released claimant to light duty work. Even assuming employer's version of the facts is correct, other doctors did not release claimant to light duty work until at least February 20, more than a week after employer stopped paying benefits. Claimant returned to work on the 27th, one week before one of the doctors recommended he return to work. The time period for temporary total disability benefits is a question of fact for the Commission to decide, and its decision should not be reversed unless it is against the manifest weight of the evidence. (*Archer Daniels Midland Co. v. Industrial Comm'n* (1990), 138 Ill. 2d 107, 118-19, 561 N.E.2d 623, 626-27.) Under these circumstances, we cannot say the Commission's decision on remand is against the manifest weight of the evidence.

For the aforementioned reasons, we affirm the decision of the Industrial Commission on remand as confirmed by the circuit court of Cook County.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD and SLATER, JJ., concur.