KNOX COUNTY YMCA, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Anita Williamson, Appellee).

Third District    No. 3—99—0441WC

Opinion filed February 18, 2000.—Rehearing denied April 3, 2000.

Brad A. Elward, Karen Kendall, and Craig S. Young, all of Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

Gregory J. Saunders, of Saunders, Condon & Kenney, of Chicago, for appellee.

JUSTICE COLWELL delivered the opinion of the court:

Claimant, Anita Williamson, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1992)) alleging that she sustained injuries on December 14, 1993, while in the employ of respondent, Knox County YMCA. The arbitrator found that claimant's injuries did not arise out of and in the course of claimant's employment by respondent. The Industrial Commission (Commission) reversed. On judicial review, the circuit court of Knox County confirmed the Commission's decision.

On appeal, respondent contends that the Commission erred in finding that claimant's injuries arose out of her employment. We affirm.

The record reveals the following relevant facts. In December 1993, claimant was 49 years old. She was employed as a PALS site director for respondent. Claimant's duties required her to watch the children of working parents during the day. During the academic year, when school was not in session, claimant would conduct the PALS program at the Knox County YMCA. However, when school was in session, the PALS program would take place offsite.

On December 14, 1993, claimant was scheduled to work the 3 p.m. to 6 p.m. shift. On that particular date, the PALS program took place at a local school. Following her shift, respondent required claimant to attend a cardio-pulmonary resuscitation (CPR) class at the Knox County YMCA. The CPR class was scheduled to begin at 6 p.m. No time was allotted between the end of claimant's shift and the beginning of the CPR class. Therefore, claimant stopped at a restaurant on the way to the YMCA. Claimant purchased a sandwich and a large soft drink at the restaurant.

The CPR class was held on the second floor of the YMCA building. Claimant attended the class for approximately 10 or 15 minutes before being informed that she could leave. Claimant sustained her injuries as she was descending a staircase to the first floor on her way out of the YMCA building.

At the hearing on her application for adjustment of claim, claimant testified that the stairwell was well-lit and had railings on both sides of the hallway. There was a runner on each stair. According to claimant, the runners were in "good shape."

At the time of her fall, claimant was wearing tennis shoes. She was holding the soft drink she had purchased for dinner in one hand and her purse in the other. Claimant described her purse as a "good size, but smaller than a gym bag." Claimant testified that she normally leaves her purse in the car. However, on the subject date, she took the purse with her to hold paper and a pen that she needed for the CPR class. In explaining how she fell, the following discussion took place:

"[Claimant]: I got down to the stairs, and I thought I was down and I could walk right off, to my knowledge that's what happened.

Arbitrator Neal: You were at the very bottom and you thought there was another step?

[Claimant]: And I thought I was done. I thought the steps were done.

[Claimant's Attorney]: I don't think—I think what the arbitrator's question was—and I don't think you necessarily understood that—I think what she is saying, you were at the bottom and you didn't realize you were at the bottom, or were you like on two stairs up and you thought you were at the bottom?

[Claimant]: I was two stairs up and I thought I was at the bottom."

As a result of the fall, claimant sustained a rupture to the left quadriceps tendon. On January 14, 1994, Dr. Myron Stachniw performed surgery to repair the rupture. After the surgery, claimant used a walker to ambulate. Claimant testified that, because she was unable to bear weight on her injured leg, she used her hands to sup-

port herself while using the walker. As a result, claimant began experiencing pains in her arms and numbness in the first three fingers on each of her hands. Claimant eventually underwent carpal tunnel surgery on each hand to resolve the pain and numbness she was experiencing.

On cross-examination claimant admitted that she was familiar with the staircase because she worked in the YMCA building on days when school was not in session and during the summer. Claimant also acknowledged that there was nothing on the stairs that made her fall and that, as far as she knew, the stairs were not defective.

Admitted into evidence was a letter from Dr. Stachniw opining that claimant's carpal tunnel syndrome was a direct result of walking aids necessitated by the injury claimant sustained at the YMCA. Respondent submitted a letter from a Dr. David E. Conner. Dr. Conner related that he has not observed many problems with carpal tunnel developing secondary to utilizing walking aids.

As mentioned, the arbitrator denied benefits, finding that there was nothing about the stairs that caused the fall, that claimant was not involved in any activity that arose out of her employment at the time of the fall, and that claimant was not exposed to any risk different from that experienced by the general public.

The Commission reversed. The Commission found that claimant's fall fit in the category of "unexplained" falls because "[claimant] is unsure of the reason for her fall, but that as far as she knows, she fell because she thought she was at the bottom of the stairs." The Commission also found that claimant's fall "arose out of" her employment. The Commission noted that the CPR class was mandatory. The Commission determined that the presence of the soft drink in one hand and the purse in the other, both of which claimant would not have had absent the mandatory CPR class, contributed to claimant's fall. According to the Commission, "[t]he soft drink and the purse were thereby connected with, and/or in furtherance of, the duties of her employment with Respondent leading to an increased risk of injury in descending Respondent's stairway." The Commission also concluded that claimant's accident occurred "in the course of" her employment because claimant's injury occurred within a reasonable time after exiting the CPR class mandated by respondent.

The Commission concluded that claimant's left knee injury and carpal tunnel syndrome were causally related to her work-related fall on the stairway. In so finding, the Commission found Dr. Stachniw's medical reports persuasive and the report of Dr. Conner not persuasive.

The Commission awarded claimant (1) temporary total disability (TTD) benefits of $115.34 per week for a period of 19$^6$/7 weeks (820

ILCS 305/8(b) (West 1992)); (2) $103.80 per week for 70 weeks for the loss of use of her left leg to the extent of 35% (820 ILCS 305/8(e) (West 1992)); (3) $103.80 per week for 28½ weeks for the loss of use of her right hand to the extent of 15% (820 ILCS 305/8(e) (West 1992)); (4) $103.80 per week for 14¼ weeks for the loss of use of her left hand to the extent of 7½% (820 ILCS 305/8(e) (West 1992)); and (5) medical expenses of $24,121.09 (820 ILCS 305/8(a) (West 1992)). The circuit court of Knox County confirmed.

On appeal, respondent argues that the Commission erred in finding that claimant's fall "arose out of" her employment where claimant testified that the reason that she fell was because she misjudged which step she was on. Respondent maintains that claimant did not face an increased risk at the time of her fall, the Commission ignored claimant's testimony regarding the cause of the fall, and the Commission created a "hybrid" category of falls that, although "explained," are treated as "unexplained."

■ A claimant bears the burden of proving all of the essential elements of his claim by a preponderance of the evidence. *Stapleton v. Industrial Comm'n*, 282 Ill. App. 3d 12, 15 (1996). In order for accidental injuries to be compensable under the Act, a claimant must show both that his injuries "arose out of" and "in the course of" employment. *Nabisco Brands, Inc. v. Industrial Comm'n*, 266 Ill. App. 3d 1103, 1106 (1994).

"In the course of" employment refers to the time, place, and circumstances under which the accident occurred. *Stapleton*, 282 Ill. App. 3d at 15. Accidental injuries sustained on an employer's premises within a reasonable time before and after work are deemed to arise "in the course of" the employment. *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 57 (1989). Respondent does not argue that claimant's initial injury did not occur "in the course of" claimant's employment. Indeed, we note that the injury occurred as claimant was leaving a CPR class mandated by respondent.

The phrase "arises out of" requires an injury's origin to be in some risk connected with, or incidental to, the employment so as to create a causal connection between the employment and the accidental injury. *Caterpillar Tractor Co.*, 129 Ill. 2d at 58. A risk is incidental to a claimant's employment when the risk belongs to or is connected with what the claimant has to do in fulfilling the duties of employment. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 45 (1987). While not all injuries are compensable, an injury is compensable if it arose out of (1) an act an employee was instructed to perform by an employer, (2) an act that an employee had a common law or statutory duty to perform while performing duties for an employer, or (3) an act

that an employee might be reasonably expected to perform incident to an employee's assigned duties. *Ace Pest Control, Inc. v. Industrial Comm'n*, 32 Ill. 2d 386, 388 (1965). However, a claimant may not recover if the risk to which he was exposed was a risk personal to him. *Nabisco Brands, Inc.*, 266 Ill. App. 3d at 1106.

The determination of whether an injury arose out of and in the course of employment is a question of fact for the Commission. The Commission's determination will not be set aside unless it is contrary to the manifest weight of the evidence. *Nabisco Brands*, 266 Ill. App. 3d 1103. For a decision to be against the manifest weight of the evidence, a review of the record must disclose that the conclusion opposite to that reached by the Commission was clearly the proper result. *Stapleton*, 282 Ill. App. 3d at 16.

■ Here, claimant fell while attending a mandatory CPR class. Accordingly, she was performing an act that she was instructed to perform by respondent. It is true that there was no evidence that the stairway was poorly lit, that the stairs in question were defective, or that there was anything on the stairs that caused claimant to fall. Moreover, we acknowledge that, in and of itself, the act of descending a staircase at the employer's place of business does not establish a risk greater than that faced by the general public. *Elliot v. Industrial Comm'n*, 153 Ill. App. 3d 238, 244 (1987). However, as the Commission noted, the presence of the soft drink in one hand and the purse in the other, both of which claimant would not have had absent the mandatory CPR class, increased the risk to claimant. Absent the purse and the soft drink in her hands, claimant would have been able to grab onto the stairwell's railings.

Respondent complains that there was no evidence that the presence of the soft drink and the purse increased the risk of an accident occurring while claimant descended the stairs. However, the Commission is allowed to make reasonable inferences from the evidence presented to it. *William G. Ceas & Co. v. Industrial Comm'n*, 261 Ill. App. 3d 630, 637 (1994). A reviewing court will not reject reasonable inferences made by the Commission merely because the court might have drawn different inferences based on the same facts. *William G. Ceas & Co.*, 261 Ill. App. 3d at 636. In this case, the Commission could have inferred that the presence of the soft drink and the purse blocked claimant's view or caused claimant to lose her balance, inducing claimant to fall.

Finally, we disagree that the Commission created a "hybrid" type of fall. A complete reading of the testimony demonstrates that claimant was unsure how she fell. That claimant speculated that she fell because she misjudged whether she was at the bottom of the stairs

does not transform the accident into a noncompensable fall. In addition, as there was no evidence that the cause of the fall was of an internal, personal origin, claimant's fall does not fit within the "idiopathic" category. *Cf.*, *Stapleton*, 282 Ill. App. 3d 12 (idiopathic nature of fall supported by medical history of claimant's knee giving out); *Elliot*, 153 Ill. App. 3d 238 (idiopathic nature of fall supported by history of injuries caused by previous automobile accident).

For the aforementioned reasons, we affirm the decision of the circuit court of Knox County.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, HOLDRIDGE and RARICK, JJ., concur.