NO. 1-01-1175WC

 IN THE APPELLATE COURT OF ILLINOIS
 FIRST JUDICIAL DISTRICT
 Industrial Commission Division
________________________________________________________________________
ANNA G. HOMERDING, ) Appeal from
 Appellant, ) Circuit Court
v. ) Cook County
THE INDUSTRIAL COMMISSION, et al. ) No. 00L50794
(House of Charles, Appellee.) )
 ) Honorable
 ) Alexander P.
White,
 ) Judge Presiding.
________________________________________________________________________

JUSTICE RARICK delivered the opinion of the court:

 Claimant, Anna G. Homerding, sought benefits pursuant to the
Workers' Compensation Act (Act) (820 ILCS 305/1 et seq. (West 1996)) for
injuries sustained to her wrist on December 11, 1996, while in the employ
of employer, House of Charles. The arbitrator determined that claimant's
injuries arose out of and in the course of her employment and awarded her
14 2/7 weeks of temporary total disability benefits, medical expenses, and
30 percent loss of use of the left hand. The arbitrator also awarded
penalties and attorney fees under sections 19(l), 19(k) and 16 of the Act
for employer's unreasonable and vexatious refusal to pay any benefits as
well as employer's misguided reliance on the opinion of its medical expert.
 On review, the Industrial Commission (Commission), with one dissent,
reversed the decision of the arbitrator finding that claimant failed to
prove she sustained an accidental injury which arose out of and in the
course of her employment. The circuit court rejected the Commission's
finding that claimant's accident did not occur in the course of her
employment but affirmed the finding that the accident did not arise out of
the
employment, and therefore confirmed the denial of benefits. Claimant
appeals. The sole issue presented on appeal is whether claimant's injuries
arose out of and in the course of her employment.
 Claimant was employed on a part-time basis as a nail technician
for employer from June 2 until December 14, 1996. Employer is a beauty
salon located in a small strip mall in Palos Park, Illinois. The mall
consisted of some seventeen stores and two parking lots, one in front of
the stores and one at the rear. The rear parking lot consisted of blacktop
painted with yellow lines and contained no signs indicating that the spots
were reserved for anyone's particular use. Employer had a rear entrance at
its salon which led to the back lot. The lots in front and back of the
stores were owned and maintained by the mall. Employer's lease obligated
employer, as tenant, however, to pay a pro rata share of the common area
costs, separate and apart from monthly rent. The lease also obligated
employer to furnish the landlord with license numbers and descriptions of
cars used by tenant and its employees and to pay the landlord $10 for each
day on which a car of tenant or its agents and/or employees parked outside
any area designated by landlord for employee parking. The lease further
authorized landlord to tow any such car from the mall at tenant's cost.
Employer's owner asserted he had no policy as to where his employees parked
their cars. He testified "everybody parks back there" in reference to the
back lot. Claimant testified on the first day she worked for employer, she
parked her car in the front lot. The next day the manager of the salon
told her "it was a 'no-no' to park in the front parking lot" and that she
had to park in the back lot with the rest of the people.
 On December 11, 1996, claimant arrived at work at approximately
8:45 a.m. and parked in the back lot. She went into work by the back door
and began setting up her supplies at her work station. She realized she
needed a second case that was still in her car and went back out to the lot
to retrieve it. The case measured approximately two and one-half feet by
one and one-half feet and contained such items as a hand dryer. Carrying
the case in her left hand, claimant slipped on some ice in the lot about
five feet from employer's door. She and the case both went flying and
claimant attempted to break her fall with her left hand. She immediately
felt great pain in her left wrist and remained on the ground for "a long
time." She eventually was able to get up and walk into the salon. She
asked for ice and wrapped her hand in a towel. A coworker drove her to a
drug store and purchased a wrist brace for her to wear. Claimant did not
have any money with which to purchase it herself. She returned to work and
finished her shift. She continued to suffer pain in her wrist but worked
the next two days wearing a brace. She then approached the manager and
asked for time off because she was not able to work properly as her hand
hurt so badly. She also told the manager she had an opportunity to visit
her son and would only be gone a few days. The manager refused the time
off and further informed claimant that her job would not be waiting for her
if she took the time off anyway. Claimant did not return to work because
of the pain. She also did not travel to visit her son because her hand was
"swollen terribly." Claimant had no money or health insurance, and
therefore, did not seek medical assistance until she was able to find a
doctor who would treat and bill her later. Claimant first sought treatment
with Dr. Paschal Panio, an orthopedic surgeon, on April 28, 1997. Dr.
Panio noted swelling in her left wrist and 20 degrees lack of both
supination and pronation and only 20 degrees of dorsiflexion and palmar
flexion. X-rays revealed a healed Colles fracture to the left wrist with
relatively good alignment. Dr. Panio opined the fracture was secondary to
claimant's fall on December 11. He recommended occupational therapy and a
wrist splint for heavy lifting. Claimant underwent therapy between May and
July of 1997. Claimant was discharged from his care in August with the
advice she continue her strengthening program and using the splint.
Claimant informed him she still had some pain and limitation of motion, and
Dr. Panio informed her this was to be expected given the nature of the
fracture. Claimant testified she has not worked anywhere since leaving
employer. She continues to experience pain in her left wrist and has
difficulty lifting and pushing things. She also wears an elastic glove on
her left hand at all times.
 On June 30, 1997, claimant was examined by Dr. Richard Shermer
at the request of employer. Dr. Shermer opined that claimant's x-rays
showed advanced healing of a fracture to her left wrist with no
malalignment and at a stage of healing that could be dated to within three
or four months prior to the x-ray. He noted, however, full pronation and
supination of the wrist with shoulder abduction. He also noted claimant
could not perform internal rotation and opined her complaints were "largely
subjective with a non-organic component."
 The arbitrator concluded claimant sustained an accident on
December 11, 1996, that arose out of and in the course of her employment.
The arbitrator specifically noted claimant was performing a task at the
time of her fall that was both reasonably foreseeable and incidental to her
duties. Additionally, the arbitrator found that employer controlled the
rear parking lot and required its employees to park there rather than in
front of the salon. After awarding benefits and medical expenses, the
arbitrator also determined employer was subject to penalties and fees
because of its unreasonable and vexatious refusal to pay any benefits and
its misguided reliance on the opinion of Dr. Shermer who never opined that
claimant's wrist fracture was unrelated to her fall or that she could
resume her regular work duties. The majority of the Commission reversed
the arbitrator's decision after finding that claimant failed to prove she
sustained an accidental injury arising out of and in the course of her
employment. The majority pointed out that employer did not own, maintain
or control the parking lot in which claimant fell. Employer also did not
limit claimant to a designated lot separate and apart from that utilized by
the general public. Accordingly, the Commission concluded claimant was not
exposed to a greater risk than the general public. Commissioner Kinnamon
in her dissent concluded claimant was entitled to benefits because she
parked in the area designated by employer for that purpose and because she
was carrying a case containing work tools when she fell. The circuit court
believed claimant sustained her burden of proving her accident occurred in
the course of her employment by showing employer provided the rear parking
lot and required her to park there. The court confirmed the Commission's
decision not to award benefits, however, because claimant failed to meet
the "arising out of" requirement. The court based its ruling on the fact
that there was no evidence presented the case claimant was carrying at the
time of her fall contributed to her accident.
 In order for accidental injuries to be compensable under the
Act, a claimant must show that his or her injuries both "arose out of" and
"in the course of" his or her employment. Caterpillar Tractor Co. v.
Industrial Comm'n, 129 Ill. 2d 52, 57, 541 N.E.2d 665, 667 (1989); Knox
County YMCA v. Industrial Comm'n, 311 Ill. App. 3d 880, 884, 725 N.E.2d
759, 762 (2000). "In the course of" employment refers to the time, place
and circumstances under which the accident occurred. Knox County, 311 Ill.
App. 3d at 884, 725 N.E.2d at 762. "Arising out of" one's employment
requires an injury's origin to be in some risk connected with, or
incidental to, the employment so as to create a causal connection between
the employment and the accidental injury. Nabisco Brands, Inc. v.
Industrial Comm'n, 266 Ill. App. 3d 1103, 1106, 641 N.E.2d 578, 581 (1994).
 Typically, an injury arises out of one's employment if, at the time of the
occurrence, the employee was performing acts he or she was instructed to
perform by the employer, acts which he or she had a common law or statutory
duty to perform, or acts which the employee might reasonably be expected to
perform incident to his or her assigned duties. 266 Ill. App. 3d at 1106,
641 N.E.2d at 581.
 The determination of whether an injury arose out of and in the
course of employment is a question of fact for the Commission which will
not be set aside unless it is contrary to the manifest weight of the
evidence. Knox County, 311 Ill. App. 3d at 885, 725 N.E.2d at 763.
Generally we are not easily moved to set aside a Commission's decision on a
factual question, but must do so when the indisputable weight of the
evidence compels an apparent, opposite conclusion. Montgomery Elevator Co.
v. Industrial Comm'n, 244 Ill. App. 3d 563, 567, 613 N.E.2d 822, 825
(1993). Such is the case in this instance.
 At the time of the accident claimant had already begun her
workday and was injured while performing a task that advanced employer's
interests and allowed her to carry out her usual employment duties. She
had already begun to set up her work station when she realized she needed
additional supplies. These supplies were in a case in her car. Claimant
went out to her car to retrieve the case and slipped on the ice in her
efforts to return to the salon. It is clear that claimant fell while
working, carrying out a task that was quite foreseeable and necessary to
her job. Accordingly, her injury necessarily arose out of and in the
course of her employment. Additionally, the risk of injury to which
claimant was exposed was connected to her employment. Claimant was
required to park in the rear of employer's business on a lot employer
financially contributed to maintain, and she needed certain supplies to
perform her job. But for the demands of her job, she would not have needed
to make a second trip to her car nor negotiate the ice between her car and
the salon door while carrying a large case. Her risk of injury accordingly
was greater than that of the general public. See De Hoyos v. Industrial
Comm'n, 26 Ill. 2d 110, 114, 185 N.E.2d 885, 887 (1962). See also
Bommarito v. Industrial Comm'n, 82 Ill. 2d 191, 196-97, 412 N.E.2d 548, 550-
51 (1980). The arbitrator interpreted the evidence correctly and therefore
the arbitrator's decision should be reinstated. We elect, however, not to
reinstate that portion of the arbitrator's decision pertaining to penalties
given the history of the case. Penalties should not be imposed when an
employer reasonably and in good faith believed that a claimant was not
entitled to workers' compensation on the grounds the injury did not arise
out of and in the course of the employment. See Complete Vending Services,
Inc. v. Industrial Comm'n, 305 Ill. App. 3d 1047, 1050-51, 714 N.E.2d 30,
32-33 (1999).
 For the aforementioned reasons, we reverse the decisions of the
Commission and the circuit court denying claimant benefits and reinstate
that portion of the arbitrator's decision awarding benefits. No penalties
and/or fees are to be assessed.
 Circuit court affirmed in part and reversed in part;
Commissioin reversed; Arbitrator's decision reinstated in part.
 McCULLOUGH, P.J., and HOLDRIDGE, J., concur.
 JUSTICE HOFFMAN, specially concurring; JUSTICE O'MALLEY joins:
 I agree with the result reached by the majority in this case.
However, because I believe that the majority's opinion might be
misinterpreted as adopting a theory of recovery grounded in positional
risk, which was repudiated by our supreme court in Brady v. Louis Ruffolo &
Sons Construction Co., 143 Ill. 2d 542, 578 N.E.2d 921 (1991), I have
elected to write separately.
 As the majority correctly notes, an employee's injury is compensable
under the Workers' Compensation Act (Act) only if it arises out of and in
the course of her employment. 820 ILCS 305/2 (West 1998). Both elements
must be present at the time of the claimant's injury in order to justify
compensation. Illinois Bell Telephone Co. v. Industrial Comm'n, 131 Ill.
2d 478, 483, 546 N.E.2d 603 (1989).
 An injury occurs "in the course of" employment when it is sustained
while the claimant is at work or while she is performing activities in
conjunction with her employment. Weiss v. Industrial Comm'n, 54 Ill. 2d
138, 142, 295 N.E.2d 459 (1973). In this case, the claimant was injured
while retrieving a case containing work supplies from her car, which was
parked in a parking lot behind her employer's premises. She fell during
working hours and at a place where she might reasonably have been while
performing her duties. Clearly, her injuries were sustained in the course
of her employment. However, the fact that she was injured in the course of
her employment is not sufficient to impose liability under the Act. To be
compensable, her injury must also have arisen out of her employment. Orsini
v. Industrial Comm'n, 117 Ill. 2d 38, 45, 509 N.E.2d 1005 (1987).
 "For an injury to 'arise out of' the employment its origin must be in
some risk connected with, or incidental to, the employment so as to create
a causal connection between the employment and the accidental injury."
Caterpillar Tractor Co. v. Industrial Comm'n, 129 Ill. 2d 52, 58, 541
N.E.2d 665 (1989). "There are three categories of risks an employee may be
exposed to: (1) risks distinctly associated with the employment; (2) risks
personal to the employee; and (3) neutral risks which have no particular
employment or personal characteristics." Illinois Institute of Technology
v. Industrial Comm'n, 314 Ill. App. 3d 149, 162, 731 N.E.2d 795 (2000).
 In this case, the claimant slipped and fell on ice in a parking lot.
The risk of such a fall is not distinctly associated with her employment,
nor is it personal to the claimant. The risk to which the claimant was
exposed is a neutral risk. As a consequence, the question of whether her
injury arose out of her employment rests on a determination of whether she
was exposed to a risk of injury to an extent greater than that to which the
general public was exposed. Illinois Institute of Technology v. Industrial
Comm'n, 314 Ill. App. 3d at 162. The Commission found that she was not and
denied her compensation. For the reasons which follow, I believe that the
Commission's decision on this issue must be reversed as being against the
manifest weight of the evidence, and the arbitrator's award, void of
penalties and fees, reinstated.
 The mere fact that the claimant's duties took her to the place of
injury and that, but for her employment, she would not have been there, is
not sufficient, of itself, to support a finding that her injuries arose out
of her employment. Illinois Bell Telephone Co. v. Industrial Comm'n, 131
Ill. 2d 478, 485-86, 546 N.E.2d 603 (1989); Caterpillar Tractor Co., 129
Ill. 2d at 63. Further, contrary to the dissenting commissioner's
assertion, there is nothing in the record which could support a finding
that the case of supplies which the claimant was carrying in any way
contributed to her fall. This case is, therefore, distinguishable from
Knox County YMCA v. Industrial Comm'n, 311 Ill. App. 3d 880, 725 N.E.2d 759
(2000). Nevertheless, I believe that the facts of this case clearly
demonstrate that the claimant was exposed to a greater risk of injury than
were members of the general public.
 The beauty salon at which the claimant was employed is located in a
strip mall. Two parking lots are available to the customers of the stores
located in the mall, one lot in the front of the stores and another in the
rear. The claimant testified that her manager, the owner's wife, told her
that she could only park in the lot to the rear of the salon. The ice upon
which the claimant slipped was located in the rear lot, approximately five
feet from the rear door to her employer's premises.
 The Commission found that "whether or not *** [the claimant] was
directed not to park in the front of the store is of no consequence ***."
However, I find that fact to be central to a determination of whether the
claimant's injury arose out of her employment.
 The rear lot in which the claimant fell was available for use by
members of the public and there is no doubt that, had a member of the
public chosen to park in that lot, he or she would have been exposed to the
same risk of falling to which the claimant was exposed. The critical
difference is that the public was free to use the front lot and the
claimant was not. By compelling the claimant to use the rear lot, her
employer chose the route she would use to enter and leave the premises.
The only practical way that the claimant could enter and leave was by the
rear door which, on the day of her fall, exposed her to the hazards of the
ice in the rear parking lot. Since the claimant was required to use the
rear lot, she was exposed to a risk common to the general public to a
greater degree than other persons who were free to use the front lot. It
is for this reason that I believe that the uncontradicted evidence in the
record supports only one reasonable conclusion; namely, that the claimant's
injury arose out of her employment. See Bommarito v. Industrial Comm'n, 82
Ill. 2d 191, 412 N.E.2d 548 (1980).
-----------------------
 NOTICE
Decision filed 02/21/02. The text of this decision may be changed or
corrected prior to the filing of a Petition for Rehearing or the
disposition of the same.