MARGARET VILL, Appellant, v. THE INDUSTRIAL COMMISSION et al. (Loyola University Medical Center, Appellee).

First District (Industrial Commission Division)   No. 1—03—3616WC

Opinion filed August 4, 2004.—Rehearing denied August 23, 2004.

Kosin Law Office, Ltd., of Chicago (Robert S. Kosin and Marilyn I. Kosin, of counsel), for appellant.

Braun, Strobel, Lorenz, Bergin & Millman, P.C., of Chicago (John P. Bergin, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The claimant, Margaret Vill, appeals from an order of the circuit court confirming a decision of the Industrial Commission (Commission), denying her benefits under the Workers' Compensation Act (Act) (820 ILCS 305/1 et seq. (West 2002)), for injuries she allegedly sustained while in the employ of the Loyola University Medical Center (Loyola). For the reasons that follow, we affirm.

The following factual recitation is taken from the evidence presented at the arbitration hearing.

The claimant was employed as a security officer at Loyola. Her duties required her to make rounds at Loyola's medical facility in Maywood, Illinois.

On April 2, 2002, the claimant was scheduled to work from 2 p.m. until 10:30 p.m. According to the claimant, she drove to Loyola in her own car, arriving at Loyola's parking lot No. 15 at approximately 1:45 p.m. She stated that lot No. 15 is the only parking lot in which security personnel were permitted to park; a fact that was verified by the claimant's supervisor, Richard Wilson. This particular parking lot was designated for use by Loyola's employees, visitors to the hospital, and patients.

The claimant testified that lot No. 15 was more crowded than usual when she arrived on April 2, 2002. She chose to park in a space near the administration building where she was to report for work. According to the claimant, the parking space was narrow due to a sports utility vehicle (SUV) which was parked in the space to the left, positioned near the yellow line which separated the two spaces. The claimant testified that, when she parked, there was approximately

eight inches between the left side of her vehicle and the SUV and that the distance between her vehicle and the one parked to the right was about six inches.

The claimant stated that, before she attempted to exit her vehicle, she picked up her uniform, belt and lunch from the right front seat. She testified that she then tried to open her car door, but it would only open "half a foot or so, or a foot." She squeezed out of the vehicle when, in her words, "I twisted my knee, and my foot got caught in like a dent in the floor, in the ground." When asked why she twisted her knee, the claimant stated, "[b]ecause I had to twist around like this to get out of the door, and I still had all my stuff inside of the car." She went on to state that she stepped in a crevice in the parking lot and she identified a photo showing a crack in the parking lot surface where she testified that she caught her left foot. According to the claimant, "the ankle twisted and the knee twisted." On cross-examination, the claimant admitted that she twisted her knee before her foot hit the ground.

The claimant testified that she did not fall to the ground. Rather, she was able to hang on to the side of her car. Although she was feeling "a little bit of pain, but not that much," the claimant decided to go to work. When she arrived at the administration building, the claimant punched in and attended a scheduled briefing. She did not inform her supervisor of the incident in the parking lot. After the briefing, the claimant was taken by bus to her assigned station where she was to "walk the hospital ensuring everything is okay."

According to the claimant, her leg started to hurt approximately four hours after she started working. She testified that, when she took off her shoe, she noticed that her leg, foot and ankle were swollen and black and blue in color. Thereafter, the claimant went to Loyola's emergency room.

Various histories are contained in Loyola's emergency room records. The initial report states: "Fall in parking lot today." The nursing flowsheet records the following: "states was getting out of car @ administration building + fell + landed on L knee." The physician's record states: "pt. was exiting car today, foot got caught, fell on knee & twisted. Pt. fell out door and hit head on car next door."

Richard Wilson, the claimant's supervisor on the day of the incident, testified that, when he learned that the claimant was in the emergency room, he went there to interview her. According to Wilson, the claimant told him that "when she got to work about 1:45, that she stepped out of her vehicle and twisted her knee and hurt her toe." He testified that the claimant never told him about a crevice in the parking lot. Wilson stated that he completed an "Employee Occurrence

Report" in which he wrote that the claimant "step[ped] out of car, twisted knee, hurt middle toe on left foot."

While at the emergency room, X rays were taken of the claimant's left leg, knee, and foot. The radiologist reports of those X rays reveal, *inter alia*: "a[n] oblique fracture of the mid shaft of the third proximal phalanx with minimal overriding of the medial displacement of the fracture fragment" and "small joint effusion." The claimant testified that she was given "Tylenol 3" for the pain, told to return the following Monday to see Dr. Zaffer, and then released.

The claimant saw Dr. Zaffer as instructed. Dr. Zaffer examined the claimant and diagnosed a fracture of one of her toes and an ankle sprain. He ordered an MRI of the claimant's left knee, which was done on April 15, 2002. A report of that exam notes the following findings: a tear of the posterior horn of the medial meniscus; a moderate amount of knee joint effusion; a thinning of the lateral patellar cartilage, with degenerative changes of the patellofemoral joint; and degenerative changes with osteophyte formation at the femoral condyle.

Dr. Zaffer informed the claimant that she would require surgery. However, since the surgeon who normally performs the type of operation that the claimant required was on a sabbatical leave, Dr. Zaffer told the claimant to select a surgeon of her choice.

The claimant saw Dr. Boone Brackett, an orthopedic surgeon, on April 18, 2002. The intake report of that visit states that the claimant "fell getting out of car at wk not work related per pt."

Dr. Brackett operated on the claimant on May 15, 2002. The procedure consisted of an arthroscopic lateral meniscectomy, shaving of the medial and lateral femoral condyles, the removal of large suprapatellar plaquem, and a Baker cystectomy. The postoperative diagnosis was a tear of the lateral meniscus, osteoarthritis of the medial and lateral femoral condyles, and plaquem with a Baker cyst.

The claimant remained off of work from April 3, 2002, until the date of the arbitration hearing on July 15, 2002.

After a hearing held pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2002)), the arbitrator found that the claimant sustained accidental injuries on April 2, 2002, arising out of and in the course of her employment with Loyola. The arbitrator awarded the claimant temporary total disability (TTD) benefits for a period of $14^5/7$ weeks and ordered Loyola to pay $26,650.15 for her necessary medical expenses.

Loyola sought a review of the arbitrator's decision before the Commission. In a unanimous decision, the Commission reversed the arbitrator's decision and denied the claimant any benefits under the Act. The Commission found that the claimant had failed to prove that

she sustained accidental injuries arising out of and in the course of her employment with Loyola. Specifically, relying on the histories contained in the records of Loyola and Dr. Brackett, the Commission found that "the conditions in the parking lot did not cause Petitioner's [claimant's] fall." The Commission went on to hold that, even if the conditions in the parking lot caused the claimant to fall, she still failed to prove that her injuries arose out of and in the course of her employment because she was "exposed to the same hazard that the general public was exposed to."

The claimant filed a petition for judicial review of the Commission's decision in the circuit court of Cook County. The circuit court confirmed the Commission's decision, and this appeal followed.

■ To be compensable under the Act, an employee's injury must have arisen out of and in the course of her employment. 820 ILCS 305/2 (West 2002). The claimant has the burden of establishing both elements by a preponderance of the evidence. *Castaneda v. Industrial Comm'n*, 97 Ill. 2d 338, 341, 454 N.E.2d 632 (1983); *O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253, 403 N.E.2d 221 (1980).

For an injury to "arise out of" the claimant's employment within the meaning of the Act, its origin must be in some way connected with, or incidental to, her employment so as to create a causal connection between the employment and the accidental injury. *Jewel Cos. v. Industrial Comm'n*, 57 Ill. 2d 38, 40, 310 N.E.2d 12 (1974). As the supreme court held in *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 58, 541 N.E.2d 665 (1989):

> "Typically, an injury arises out of one's employment if, at the time of the occurrence, the employee was performing acts he was instructed to perform by his employer, acts which he had a common law or statutory duty to perform, or acts which the employee might reasonably be expected to perform incident to his assigned duties. [Citation.] A risk is incidental to the employment where it belongs to or is connected with what an employee has to do in fulfilling his duties. [Citations.]"

However, if the injury is the result of a hazard or occurrence which the employee would have been equally exposed to apart from the employment, then the injury is not compensable under the Act. *Caterpillar Tractor Co.*, 129 Ill. 2d at 59.

"In the course of the employment" refers to the time, place, and circumstances under which the claimant is injured. *Scheffler Greenhouses, Inc. v. Industrial Comm'n*, 66 Ill. 2d 361, 366, 362 N.E.2d 325 (1977). Injuries sustained on an employer's premises, or at a place where the claimant might reasonably have been while performing her duties, and while she is at work, or within a reasonable time before

and after work, are generally deemed to have been received in the course of the employment. *Caterpillar Tractor Co.*, 129 Ill. 2d at 57.

■ When an employee slips and falls, or is otherwise injured, at a point off of the employer's premises while traveling to or from work, her injuries are ordinarily not compensable under the Act. *Butler Manufacturing Co. v. Industrial Comm'n*, 85 Ill. 2d 213, 216, 422 N.E.2d 625 (1981). However, two exceptions to this general rule have been recognized. First, recovery has been permitted where the employee is injured in a parking lot provided by and under the control of the employer. *Illinois Bell Telephone Co. v. Industrial Comm'n*, 131 Ill. 2d 478, 484, 546 N.E.2d 603 (1989). This exception, known as the "parking lot exception" (see *Mores-Harvey v. Industrial Comm'n*, 345 Ill. App. 3d 1034, 1038, 804 N.E.2d 1086 (2004)), is applicable in circumstances where the employee's injury is caused by some hazardous condition in the parking lot. See *Archer Daniels Midland Co. v. Industrial Comm'n*, 91 Ill. 2d 210, 217, 437 N.E.2d 609 (1982); *Hiram Walker & Sons, Inc. v. Industrial Comm'n*, 41 Ill. 2d 429, 431, 244 N.E.2d 179 (1968); *De Hoyos v. Industrial Comm'n*, 26 Ill. 2d 110, 114, 185 N.E.2d 885 (1962). Second, recovery has also been permitted when the employee is injured at a place where she was required to be in the performance of her duties and the employee is exposed to a risk common to the general public to a greater degree than other persons. *Illinois Bell Telephone Co.*, 131 Ill. 2d at 484.

Whether there exists a causal connection between a claimant's employment and her injury is a question of fact to be decided by the Commission, whose resolution of the matter will not be disturbed on review unless it is against the manifest weight of the evidence. *O'Dette*, 79 Ill. 2d at 253. For a finding of fact made by the Commission to be against the manifest weight of the evidence, an opposite conclusion must be clearly evident. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291, 591 N.E.2d 894 (1992). The appropriate test is whether there is sufficient evidence in the record to support the Commission's determination. *Benson v. Industrial Comm'n*, 91 Ill. 2d 445, 450, 440 N.E.2d 90 (1982).

■ In this case, the claimant was injured as she was getting out of her car in Loyola's parking lot on her way to work. She testified that, as she attempted to exit her vehicle, she twisted her knee and her foot got caught in a crack in the parking lot surface. However, there is no mention of any crack in the parking lot surface contained in the histories set forth in Loyola's emergency room records or the records of Dr. Brackett. Further, Wilson testified that the claimant made no mention of any crack in the parking lot when he interviewed her in the emergency room on the date of her injury.

Whether the claimant did or did not catch her foot in a crack in the parking lot surface is a question of fact resting upon the credibility of the claimant's testimony. The Commission found that the conditions in the parking lot did not cause the claimant's fall. It is the function of the Commission to judge the credibility of witnesses and to resolve conflicts in the evidence. *O'Dette*, 79 Ill. 2d at 253. Based upon the total absence of any reference in the claimant's medical records to her foot having gotten caught in a crack in the parking lot and the claimant's failure to mention that fact to Wilson, we cannot say that the Commission's determination that the conditions in the parking lot did not cause the claimant to fall is against the manifest weight of the evidence.

We next focus our inquiry on the question of whether the claimant was exposed to a risk of injury to an extent greater than that to which the general public is exposed. Clearly, the risk of injury that is inherent in the act of exiting a motor vehicle confronts all members of the general public. There is nothing in the record to distinguish the claimant's acts in this regard from the acts of any other person attempting to squeeze out of a vehicle that has been parked in such close proximity to another vehicle that the door cannot be fully opened. For this reason, we find that the claimant was not exposed to a risk uncommon to the general public.

Based upon the foregoing analysis, the Commission's finding that the claimant failed to prove that she sustained accidental injuries arising out of and in the course of her employment is not against the manifest weight of the evidence. *Caterpillar Tractor Co.*, 129 Ill. 2d at 59-63. In so finding, we express no opinion on the Commission's alternate holding to the effect that, even if the conditions in Loyola's parking lot caused the claimant to fall, she did not sustain her burden of proof.

For the foregoing reasons, we affirm the judgment of the circuit court which confirmed the decision of the Commission.

Affirmed.

McCULLOUGH, P.J., and CALLUM and HOLDRIDGE, JJ., concur.

JUSTICE GOLDENHERSH, dissenting:

I respectfully dissent. The majority opinion focuses on the circumstances of claimant in the parking lot and her activities therein and also reviews the Commission's factual decision concerning claimant's credibility. The Commission also reviews her testimony as to how this accident occurred, contrasting it with the lack of such nar-

ration in the medical histories of Loyola and Dr. Brackett. In my view, the majority is incorrect in resolving both.

The majority disposition reviews the parking lot exception and comes to the conclusion that claimant was not exposed to any greater risk of injury by parking in this particular lot than was any member of the general public who would be using the lot in order to procure the services of respondent hospital. This analysis is incorrect for the following reason. While it is disputed as to whether claimant received her injury from a fall caused by tripping in a crevice in the lot, which admittedly had crevices, or whether she got her injury from twisting to get out of a narrow parking space on that lot, this factual difference is not a controlling factor in disposition of her claim for adjustment. Claimant's supervisor verified that this lot, lot No. 15, was the only parking lot in which security personnel were allowed to park. Claimant was required by Loyola to clock in a certain number of minutes before her shift started. The majority explains as part of the uncontested factual background that "claimant stated that, before she attempted to exit her vehicle, she picked up her uniform, belt and lunch from the right front seat." 351 Ill. App. 3d at 800.

Claimant, under the circumstances that are uncontested in this case and setting aside momentarily the dispute as to the exact physical causation of her injuries, was clearly performing duties mandated by her employer (the carrying of her uniform, belt and lunch, attempting to exit her vehicle to clock in at the appropriate time, and doing so in the only parking lot mandated by her employer, lot No. 15). In doing so, it is clear that this accident arose out of her employment since she was directed by employer to this lot and, therefore, she was at greater risk to the hazards of that lot than the general public, whether that hazard be crevices in the surface of the parking lot or narrow spaces for vehicles from which one must attempt to exit while carrying items mandated by employer to be used in discharging occupational duties. *Knox County YMCA v. Industrial Comm'n*, 311 Ill. App. 3d 880, 883, 885, 725 N.E.2d 759 (2000); *Mores-Harvey v. Industrial Comm'n*, 345 Ill. App. 3d 1034, 1036-37, 804 N.E.2d 1086 (2004).

Another case somewhat on point is *Homerding v. Industrial Comm'n*, 327 Ill. App. 3d 1050, 765 N.E.2d 1064 (2002), in which the claimant parked in the area generally indicated by employer and realized she needed supplies still in her car in order to set up her work station as a nail technician. She slipped and fell on ice while returning to her work station, items in hand. The arbitrator concluded that the claimant had sustained an accident arising out of and in the course of her employment since she was performing a task that was reasonably foreseeable and incidental to her employment, and the parking lot

where she parked was the one mandated by her employer. The Commission reversed, noting that the employer did not own, maintain, or control the parking lot, and since the general public used that same lot, the claimant was not exposed to any risk greater than that of the general public. The dissent by Commissioner Kinnamon noted that since she was parked in the area designated by the employer and was carrying work tools, the arbitrator's decision should be affirmed. The circuit court confirmed on the basis of the claimant failing to meet the arising out of standard. This court stated:

> "Claimant was required to park in the rear of employer's business on a lot employer financially contributed to maintain, and she needed certain supplies to perform her job. But for the demands of her job, she would not have needed to make a second trip to her car or negotiate the ice between her car and the salon door while carrying a large case. Her risk of injury accordingly was greater than that of the general public. [Citations.]" *Homerding v. Industrial Comm'n*, 327 Ill. App. 3d 1050, 1054 (2002).

Justice Hoffman, in a special concurring opinion, noted as follows:

> "The Commission found that 'whether or not *** [the claimant] was directed not to park in the front of the store is of no consequence.' However, I find that fact to be central to a determination of whether the claimant's injury arose out of her employment.
>
> The rear lot in which the claimant fell was available for use by members of the public and there is no doubt that, had a member of the public chosen to park in that lot, he or she would have been exposed to the same risk of falling to which the claimant was exposed. The critical difference is that the public was free to use the front lot and the claimant was not. By compelling the claimant to use the rear lot, her employer chose the route she would use to enter and leave the premises. The only practical way that the claimant could enter and leave was by the rear door which, on the day of her fall, exposed her to the hazards of the ice in the rear parking lot. Since the claimant was required to use the rear lot, she was exposed to a risk common to the general public to a greater degree than other persons who were free to use the front lot. It is for this reason that I believe that the uncontradicted evidence in the record supports only one reasonable conclusion; namely, that the claimant's injury arose out of her employment. [Citation.]" *Homerding v. Industrial Comm'n*, 327 Ill. App. 3d 1050, 1057 (2002), (Hoffman, J., specially concurring, joined by O'Malley, J.).

The instant case reflects those criteria noted by both the majority disposition and the special concurrence in *Homerding*. Claimant was parking and exiting her vehicle in the lot mandated by her employer. Claimant, at the time of exiting her vehicle, was carrying the items

she was required to use in discharging her employment duties. Whether claimant's injury was sustained by a fall precipitated by twisting to get out of her vehicle in a narrow parking space, or by catching her foot in a crevice on the surface of the parking lot, claimant was at a risk greater than that of the general public. The Commission's basis for denying her claim rests on its determination of credibility as to the exact details of how the accident occurred, which are surplusage under these circumstances, and also based on the Commission ignoring the employer's mandate that claimant use this particular parking lot. The decision of the Commission, accordingly, should be reversed and remanded with directions to reinstate the decision of the arbitrator. See *Homerding,* 327 Ill. App. 3d at 1055.