ANNA G. HOMERDING, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (House of Charles, Appellee).

First District (Industrial Commission Division) No. 1—01—1175WC

Opinion filed February 21, 2002.

HOFFMAN, J., specially concurring, joined by O'MALLEY, J.

John J. Castaneda and Molly C. Mason, both of Corti, Freeman & Aleksy, of Chicago, for appellant.

William S. Robinson, of Nyhan, Pfister, Bambrick, Kinzie & Lowry, P.C., of Chicago, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Anna G. Homerding, sought benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1996)) for injuries sustained to her wrist on December 11, 1996, while in the employ of employer, House of Charles. The arbitrator determined that claimant's injuries arose out of and in the course of her employment and awarded her 14²/₇ weeks of temporary total disability benefits, medical expenses, and 30% loss of use of the left hand. The arbitrator also awarded penalties and attorney fees under sections 19(*l*), 19(k) and 16 of the Act for employer's unreasonable and vexatious refusal to pay any benefits as well as employer's misguided reliance on the opinion of its medical expert. On review, the Industrial Commission (Commission), with one dissent, reversed the decision of the arbitrator finding that claimant failed to prove she sustained an accidental injury which arose out of and in the course of her employment. The circuit court rejected the Commission's finding that claimant's accident did not occur in the course of her employment but affirmed the finding that the accident did not arise out of the employment, and therefore confirmed the denial of benefits. Claimant appeals. The sole issue presented on appeal is whether claimant's injuries arose out of and in the course of her employment.

Claimant was employed on a part-time basis as a nail technician for employer from June 2 until December 14, 1996. Employer is a beauty salon located in a small strip mall in Palos Park, Illinois. The mall consisted of some 17 stores and 2 parking lots, one in front of the stores and one at the rear. The rear parking lot consisted of blacktop painted with yellow lines and contained no signs indicating that the spots were reserved for anyone's particular use. Employer had a rear entrance at its salon which led to the back lot. The lots in front and back of the stores were owned and maintained by the mall. Employer's lease obligated employer, as tenant, however, to pay a *pro rata* share of the common area costs, separate and apart from monthly rent. The lease also obligated employer to furnish the landlord with license numbers and descriptions of cars used by the tenant and its employees and to pay the landlord $10 for each day on which a car of the tenant or its agents and/or employees parked outside any area designated by the landlord for employee parking. The lease further authorized the landlord to tow any such car from the mall at tenant's cost. Employer's owner asserted he had no policy as to where his employees parked their cars. He testified "everybody parks back there" in reference to the back lot. Claimant testified on the first day she worked for employer, she parked her car in the front lot. The next day the manager of the salon told her "it was a 'no-no' to park in the front

parking lot" and that she had to park in the back lot with the rest of the people.

On December 11, 1996, claimant arrived at work at approximately 8:45 a.m. and parked in the back lot. She went into work by the back door and began setting up her supplies at her work station. She realized she needed a second case that was still in her car and went back out to the lot to retrieve it. The case measured approximately 2½ feet by 1½ feet and contained such items as a hand dryer. Carrying the case in her left hand, claimant slipped on some ice in the lot about five feet from employer's door. She and the case both went flying and claimant attempted to break her fall with her left hand. She immediately felt great pain in her left wrist and remained on the ground for "a long time." She eventually was able to get up and walk into the salon. She asked for ice and wrapped her hand in a towel. A coworker drove her to a drugstore and purchased a wrist brace for her to wear. Claimant did not have any money with which to purchase it herself. She returned to work and finished her shift. She continued to suffer pain in her wrist but worked the next two days wearing a brace. She then approached the manager and asked for time off because she was not able to work properly as her hand hurt so badly. She also told the manager she had an opportunity to visit her son and would only be gone a few days. The manager refused the time off and further informed claimant that her job would not be waiting for her if she took the time off anyway. Claimant did not return to work because of the pain. She also did not travel to visit her son because her hand was "swollen terribly." Claimant had no money or health insurance and, therefore, did not seek medical assistance until she was able to find a doctor who would treat and bill her later. Claimant first sought treatment with Dr. Paschal Panio, an orthopedic surgeon, on April 28, 1997. Dr. Panio noted swelling in her left wrist and 20 degrees lack of both supination and pronation and only 20 degrees of dorsiflexion and palmar flexion. X rays revealed a healed Colles fracture to the left wrist with relatively good alignment. Dr. Panio opined the fracture was secondary to claimant's fall on December 11. He recommended occupational therapy and a wrist splint for heavy lifting. Claimant underwent therapy between May and July of 1997. Claimant was discharged from his care in August with the advice she continue her strengthening program and using the splint. Claimant informed him she still had some pain and limitation of motion, and Dr. Panio informed her this was to be expected given the nature of the fracture. Claimant testified she has not worked anywhere since leaving employer. She continues to experience pain in her left wrist and has difficulty lifting and pushing things. She also wears an elastic glove on her left hand at all times.

On June 30, 1997, claimant was examined by Dr. Richard Shermer at the request of employer. Dr. Shermer opined that claimant's X rays showed advanced healing of a fracture to her left wrist with no malalignment and at a stage of healing that could be dated to within three or four months prior to the X ray. He noted, however, full pronation and supination of the wrist with shoulder abduction. He also noted claimant could not perform internal rotation and opined her complaints were "largely subjective with a nonorganic component."

The arbitrator concluded claimant sustained an accident on December 11, 1996, that arose out of and in the course of her employment. The arbitrator specifically noted claimant was performing a task at the time of her fall that was both reasonably foreseeable and incidental to her duties. Additionally, the arbitrator found that employer controlled the rear parking lot and required its employees to park there rather than in front of the salon. After awarding benefits and medical expenses, the arbitrator also determined employer was subject to penalties and fees because of its unreasonable and vexatious refusal to pay any benefits and its misguided reliance on the opinion of Dr. Shermer, who never opined that claimant's wrist fracture was unrelated to her fall or that she could resume her regular work duties. The majority of the Commission reversed the arbitrator's decision after finding that claimant failed to prove she sustained an accidental injury arising out of and in the course of her employment. The majority pointed out that employer did not own, maintain or control the parking lot in which claimant fell. Employer also did not limit claimant to a designated lot separate and apart from that utilized by the general public. Accordingly, the Commission concluded claimant was not exposed to a greater risk than the general public. Commissioner Kinnamon in her dissent concluded claimant was entitled to benefits because she parked in the area designated by employer for that purpose and because she was carrying a case containing work tools when she fell. The circuit court believed claimant sustained her burden of proving her accident occurred in the course of her employment by showing employer provided the rear parking lot and required her to park there. The court confirmed the Commission's decision not to award benefits, however, because claimant failed to meet the "arising out of" requirement. The court based its ruling on the fact that there was no evidence presented the case claimant was carrying at the time of her fall contributed to her accident.

■ In order for accidental injuries to be compensable under the Act, a claimant must show that his or her injuries both "arose out of" and "in the course of" his or her employment. *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 57, 541 N.E.2d 665, 667 (1989);

*Knox County YMCA v. Industrial Comm'n*, 311 Ill. App. 3d 880, 884, 725 N.E.2d 759, 762 (2000). "In the course of" employment refers to the time, place and circumstances under which the accident occurred. *Knox County*, 311 Ill. App. 3d at 884, 725 N.E.2d at 762. "Arising out of" one's employment requires an injury's origin to be in some risk connected with, or incidental to, the employment so as to create a causal connection between the employment and the accidental injury. *Nabisco Brands, Inc. v. Industrial Comm'n*, 266 Ill. App. 3d 1103, 1106, 641 N.E.2d 578, 581 (1994). Typically, an injury arises out of one's employment if, at the time of the occurrence, the employee was performing acts he or she was instructed to perform by the employer, acts which he or she had a common law or statutory duty to perform, or acts which the employee might reasonably be expected to perform incident to his or her assigned duties. 266 Ill. App. 3d at 1106, 641 N.E.2d at 581.

■ The determination of whether an injury arose out of and in the course of employment is a question of fact for the Commission which will not be set aside unless it is contrary to the manifest weight of the evidence. *Knox County*, 311 Ill. App. 3d at 885, 725 N.E.2d at 763. Generally we are not easily moved to set aside a Commission's decision on a factual question, but we must do so when the indisputable weight of the evidence compels an apparent, opposite conclusion. *Montgomery Elevator Co. v. Industrial Comm'n*, 244 Ill. App. 3d 563, 567, 613 N.E.2d 822, 825 (1993). Such is the case in this instance.

■ At the time of the accident claimant had already begun her workday and was injured while performing a task that advanced employer's interests and allowed her to carry out her usual employment duties. She had already begun to set up her work station when she realized she needed additional supplies. These supplies were in a case in her car. Claimant went out to her car to retrieve the case and slipped on the ice in her efforts to return to the salon. It is clear that claimant fell while working, carrying out a task that was quite foreseeable and necessary to her job. Accordingly, her injury necessarily arose out of and in the course of her employment. Additionally, the risk of injury to which claimant was exposed was connected to her employment. Claimant was required to park in the rear of employer's business on a lot employer financially contributed to maintain, and she needed certain supplies to perform her job. But for the demands of her job, she would not have needed to make a second trip to her car or negotiate the ice between her car and the salon door while carrying a large case. Her risk of injury accordingly was greater than that of the general public. See *De Hoyos v. Industrial Comm'n*, 26 Ill. 2d 110, 114, 185 N.E.2d 885, 887 (1962). See also *Bommarito v. Industrial Comm'n*,

82 Ill. 2d 191, 196-97, 412 N.E.2d 548, 550-51 (1980). The arbitrator interpreted the evidence correctly and therefore the arbitrator's decision should be reinstated. We elect, however, not to reinstate that portion of the arbitrator's decision pertaining to penalties given the history of the case. Penalties should not be imposed when an employer reasonably and in good faith believed that a claimant was not entitled to workers' compensation on the grounds the injury did not arise out of and in the course of the employment. See *Complete Vending Services, Inc. v. Industrial Comm'n*, 305 Ill. App. 3d 1047, 1050-51, 714 N.E.2d 30, 32-33 (1999).

For the aforementioned reasons, we reverse the decisions of the Commission and the circuit court denying claimant benefits and reinstate that portion of the arbitrator's decision awarding benefits. No penalties and/or fees are to be assessed.

Circuit court affirmed in part and reversed in part; Commission reversed; arbitrator's decision reinstated in part.

McCULLOUGH, P.J., and HOLDRIDGE, J., concur.

JUSTICE HOFFMAN, specially concurring:
I agree with the result reached by the majority in this case. However, because I believe that the majority's opinion might be misinterpreted as adopting a theory of recovery grounded in positional risk, which was repudiated by our supreme court in *Brady v. Louis Ruffolo & Sons Construction Co.*, 143 Ill. 2d 542, 578 N.E.2d 921 (1991), I have elected to write separately.

As the majority correctly notes, an employee's injury is compensable under the Workers' Compensation Act (Act) only if it arises out of and in the course of her employment. 820 ILCS 305/2 (West 1998). Both elements must be present at the time of the claimant's injury in order to justify compensation. *Illinois Bell Telephone Co. v. Industrial Comm'n*, 131 Ill. 2d 478, 483, 546 N.E.2d 603 (1989).

An injury occurs "in the course of" employment when it is sustained while the claimant is at work or while she is performing activities in conjunction with her employment. *Wise v. Industrial Comm'n*, 54 Ill. 2d 138, 142, 295 N.E.2d 459 (1973). In this case, the claimant was injured while retrieving a case containing work supplies from her car, which was parked in a parking lot behind her employer's premises. She fell during working hours and at a place where she might reasonably have been while performing her duties. Clearly, her injuries were sustained in the course of her employment. However, the fact that she was injured in the course of her employment is not suf-

ficient to impose liability under the Act. To be compensable, her injury must also have arisen out of her employment. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 45, 509 N.E.2d 1005 (1987).

"For an injury to 'arise out of' the employment its origin must be in some risk connected with, or incidental to, the employment so as to create a causal connection between the employment and the accidental injury." *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 58, 541 N.E.2d 665 (1989). "There are three categories of risks an employee may be exposed to: (1) risks distinctly associated with the employment; (2) risks personal to the employee; and (3) neutral risks which have no particular employment or personal characteristics." *Illinois Institute of Technology Research Institute v. Industrial Comm'n*, 314 Ill. App. 3d 149, 162, 731 N.E.2d 795 (2000).

In this case, the claimant slipped and fell on ice in a parking lot. The risk of such a fall is not distinctly associated with her employment, nor is it personal to the claimant. The risk to which the claimant was exposed is a neutral risk. As a consequence, the question of whether her injury arose out of her employment rests on a determination of whether she was exposed to a risk of injury to an extent greater than that to which the general public was exposed. *Illinois Institute of Technology*, 314 Ill. App. 3d at 162. The Commission found that she was not and denied her compensation. For the reasons which follow, I believe that the Commission's decision on this issue must be reversed as being against the manifest weight of the evidence, and the arbitrator's award, void of penalties and fees, reinstated.

The mere fact that the claimant's duties took her to the place of injury and that, but for her employment, she would not have been there, is not sufficient, of itself, to support a finding that her injuries arose out of her employment. *Illinois Bell Telephone Co. v. Industrial Comm'n*, 131 Ill. 2d 478, 485-86, 546 N.E.2d 603 (1989); *Caterpillar Tractor Co.*, 129 Ill. 2d at 63. Further, contrary to the dissenting commissioner's assertion, there is nothing in the record which could support a finding that the case of supplies which the claimant was carrying in any way contributed to her fall. This case is, therefore, distinguishable from *Knox County YMCA v. Industrial Comm'n*, 311 Ill. App. 3d 880, 725 N.E.2d 759 (2000). Nevertheless, I believe that the facts of this case clearly demonstrate that the claimant was exposed to a greater risk of injury than were members of the general public.

The beauty salon at which the claimant was employed is located in a strip mall. Two parking lots are available to the customers of the stores located in the mall, one lot in the front of the stores and another in the rear. The claimant testified that her manager, the owner's

wife, told her that she could only park in the lot to the rear of the salon. The ice upon which the claimant slipped was located in the rear lot, approximately five feet from the rear door to her employer's premises.

The Commission found that "whether or not *** [the claimant] was directed not to park in the front of the store is of no consequence." However, I find that fact to be central to a determination of whether the claimant's injury arose out of her employment.

The rear lot in which the claimant fell was available for use by members of the public and there is no doubt that, had a member of the public chosen to park in that lot, he or she would have been exposed to the same risk of falling to which the claimant was exposed. The critical difference is that the public was free to use the front lot and the claimant was not. By compelling the claimant to use the rear lot, her employer chose the route she would use to enter and leave the premises. The only practical way that the claimant could enter and leave was by the rear door which, on the day of her fall, exposed her to the hazards of the ice in the rear parking lot. Since the claimant was required to use the rear lot, she was exposed to a risk common to the general public to a greater degree than other persons who were free to use the front lot. It is for this reason that I believe that the uncontradicted evidence in the record supports only one reasonable conclusion; namely, that the claimant's injury arose out of her employment. See *Bommarito v. Industrial Comm'n*, 82 Ill. 2d 191, 412 N.E.2d 548 (1980).

O'MALLEY, J., joins in this special concurrence.