JANICE MORES-HARVEY, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Bob Evans Restaurant, Appellant).

Third District (Industrial Commission Division)   No. 3—03—0081WC

Opinion filed February 6, 2004.

Edward R. Tomkowiak, of Rusin, Patton, Maciorowski & Friedman, Ltd., of Chicago, for appellant.

Michael D. Block, of Block & Block, P.C., of Joliet, for appellee.

JUSTICE CALLUM delivered the opinion of the court:

## I. INTRODUCTION

Claimant, Janice Mores-Harvey, filed an application for adjustment of claim under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2002)) for injuries she sustained when she slipped and fell on employer's, Bob Evans Restaurant's, parking lot. Following a hearing on claimant's section 19(b) petition (820 ILCS 305/19(b) (West 2002)), the arbitrator awarded claimant 15⁴/₇ weeks' temporary total disability benefits and $18,230.82 in medical expenses. Employer appealed, and the Industrial Commission (Commission) reversed, finding that claimant failed to prove that she suffered accidental injuries arising out of and in the course of her employment with employer. Claimant appealed, and the circuit court reversed and reinstated the arbitrator's decision. Employer now appeals.

## II. BACKGROUND

Claimant worked as a waitress for employer. On December 17, 1997, at about 6 or 7 a.m., claimant drove to work to begin her 6 a.m.

to 2 p.m. shift. She parked her car behind employer's restaurant in the parking lot that surrounds the building. As she exited her car, claimant put one foot down and slipped and fell on ice, hit her head on the car door, and landed on her back. She testified that it had snowed and was very cold outside, and employer's parking lot had not been shoveled.

Claimant walked into the restaurant and informed her manager that she had an accident in the parking lot. The manager, Jennifer Kuder, told claimant that she had been unsuccessful in her attempts to contact a snow-removal service. Claimant worked her entire shift that day.

Employer's restaurant is located on the corner of McDonough and Larkin Roads in Joliet. Claimant testified that the restaurant is surrounded by a parking lot. There is no parking on McDonough Street, which runs adjacent to the restaurant's entrance. Claimant routinely parked her car in employer's lot behind the restaurant. Employees were directed to park on either the side or back of the parking lot so that customers could park in the front. The lot is not lit. Although no one at employer told claimant that she had to use the restaurant's lot, claimant testified that there was no other place to park. Claimant understood that employer maintained the lot.

The arbitrator awarded claimant 15⁴/₇ weeks' temporary total disability benefits and $18,230 in medical expenses. Employer appealed, arguing that claimant failed to prove that she sustained injuries arising out of and in the course of her employment with employer. On review, the Commission reversed the arbitrator's decision. Relying on *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52 (1989), the Commission found that claimant's fall resulted from the natural accumulation of snow and ice on a lot intended for the use of employees and customers alike. The record did not support a finding that there was a defect in the parking lot surface. Because the accumulation was a natural hazard to which the general public was equally exposed in all parking areas of employer's restaurant, claimant's claim for compensation was denied.

One commissioner dissented, arguing that claimant was at an increased risk when she slipped and fell because the snow and ice constituted a defect on employer's lot. Employer's failure to remove the defect on the lot increased the risk of injury faced by claimant because she was required to use the lot to get to work. Furthermore, the dissenting commissioner indicated that claimant faced an increased risk because she arrived at work at 6 a.m. while it was still dark, and the lot was unlit and unplowed. Unlike the general public, claimant could not choose a parking spot closest to the restaurant door.

Claimant appealed, and the circuit court reversed the Commission's decision and reinstated the arbitrator's award. The court found that the Commission based its ruling in part on its finding that the ice accumulation was a natural accumulation. The court reasoned that such a finding was a negligence law concept that had no bearing in workers' compensation matters. Characterizing the issue as whether the claimant was placed at a greater risk than the general public because of her employment, the court found that she was and that the Commission applied the wrong legal standard. Additionally, the court found that the Commission's finding was against the manifest weight of the evidence. Employer timely appealed.

## III. ANALYSIS

■ Employer argues that the Commission's decision was not against the manifest weight of the evidence, as claimant's injuries did not arise out of her employment. The determination of whether a claimant's injury arose out of or in the course of the claimant's employment is a question of fact for the Commission to resolve, and its determination will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Homerding v. Industrial Comm'n*, 327 Ill. App. 3d 1050, 1054 (2002).

To obtain compensation under the Act, a claimant must show, by a preponderance of the evidence, that he or she suffered a disabling injury that arose out of and in the course of the claimant's employment. 820 ILCS 305/2 (West 2002); *Baggett v. Industrial Comm'n*, 201 Ill. 2d 187, 194 (2002). An injury "arises out of" one's employment if it originates from a risk connected with, or incidental to, the employment and involves a causal connection between the employment and the accidental injury. *Baggett*, 201 Ill. 2d at 194. A risk is incidental to the employment where it belongs to or is connected with what an employee has to do in fulfilling his or her duties. *Caterpillar Tractor*, 129 Ill. 2d at 58.

■ An injury occurs "in the course of" employment when it occurs during employment and at a place where the claimant may reasonably perform employment duties, and while a claimant fulfills those duties or engages in some incidental employment duties. *Baggett*, 201 Ill. 2d at 194. Accidental injuries sustained on an employer's premises within a reasonable time before and after work are generally deemed to arise in the course of the employment. *Caterpillar Tractor*, 129 Ill. 2d at 57; *Doyle v. Industrial Comm'n*, 95 Ill. 2d 103, 106 (1983). However, when an employee slips and falls at a point off of the employer's premises while traveling to or from work, the resulting injuries do not arise out of and in the course of the claimant's employment and are not

compensable under the Act. *Joiner v. Industrial Comm'n*, 337 Ill. App. 3d 812, 815 (2003); *Illinois Bell Telephone Co. v. Industrial Comm'n*, 131 Ill. 2d 478, 483-84 (1989). While the distinction between on- and off-premises injuries has been described as arbitrary, it has also been noted that its advantages include that it is logical and easily administered. *Doyle*, 95 Ill. 2d at 107.

■ There have developed two exceptions to this "general premises rule." *Illinois Bell Telephone Co.*, 131 Ill. 2d at 484. First, recovery has been permitted where the employee has sustained injuries in a parking lot "provided by and under the control of" an employer. *Illinois Bell Telephone Co.*, 131 Ill. 2d at 484. Second, recovery has been permitted for off-premises injuries when "the employee's presence at the place where the accident occurred was required in the performance of his duties and the employee is exposed to a risk common to the general public to a greater degree than other persons." *Illinois Bell Telephone Co.*, 131 Ill. 2d at 484.

Turning to the parking lot exception, slips or falls on an employer-provided lot when hazardous conditions are present are generally compensable. See *Archer Daniels Midland Co. v. Industrial Comm'n*, 91 Ill. 2d 210, 217 (1982) (injury arose out of and in the course of employment where employee slipped on ice while walking from employer's parking lot through gate to plant grounds because injury resulted from a risk incident to employment); *Hiram Walker & Sons v. Industrial Comm'n*, 41 Ill. 2d 429, 431 (1968) (injury arose out of and in the course of employment where the claimant injured his hand after he slipped and fell in snowy and icy company parking lot after he had parked his car in the lot because "[h]is presence in the lot was due entirely to his employment"); *De Hoyos v. Industrial Comm'n*, 26 Ill. 2d 110, 114 (1962) (snow and ice; "an employee who falls on a parking lot provided by his employer while proceeding to work, we believe, is subjected to hazards to which the general public is not exposed"). The rationale for awarding compensation is that the employer-provided parking lot is considered part of the employer's premises. See 1 L. Larson, Larson's Workers' Compensation Law §§ 13.04(2)(a), (2)(b), at 13—40 through 13—41 (2002) (practically all jurisdictions consider parking lots owned or maintained by the employer as part of the employer's premises; once the parking lot is considered part of the employer's premises, "compensation coverage attaches to any injury that would be compensable on the main premises").

Employer questions the utility of the foregoing cases given the supreme court's *Caterpillar Tractor* decision. In that case, the claimant was injured on his way to the employee parking lot after his shift.

Immediately in front of the employer's building was a sidewalk with a curb running along its edge. A blacktop driveway next to the curb was part of the company premises and was used both by employees and the general public to pick up employees. The claimant stepped off of the curb and onto the driveway. His right foot landed half on the cement incline and half on the driveway, and the claimant twisted his ankle.

The supreme court first considered whether the claimant's injury resulted from the condition of the employer's premises. It noted that the claimant did not trip, slip, or fall. The court concluded that the claimant's injury did not result from the condition of the employer's premises because there was no evidence that the curb was either hazardous or defective. *Caterpillar Tractor*, 129 Ill. 2d at 61. Next, the court considered whether the claimant was subjected to a greater degree of risk than the general public because of his employment. It found that curbs and the risks that are inherent in traversing them confront all members of the public. Rejecting the claimant's argument that he regularly crossed the curb to reach his car, the court found that there was nothing in the record to distinguish this curb from any other curb. Accordingly, the court held that the Commission's finding that the claimant's injury arose out of his employment was contrary to the evidence. *Caterpillar Tractor*, 129 Ill. 2d at 62.

We do not read *Caterpillar Tractor* as questioning the continuing viability of the earlier parking lot slip-and-fall cases. We note that the *Caterpillar Tractor* court cited the earlier cases in reviewing the court's "continued adherence to the maxim that an injury is not compensable unless it is causally connected to the employment." *Caterpillar Tractor*, 129 Ill. 2d at 62. The court further stated:

> "Where liability has been imposed, the injury occurred either as a direct result of a hazardous condition on the employer's premises [citing *Hiram Walker & Sons* and *De Hoyos*] or arose from some risk connected with, or incidental to, the employment [citations]." *Caterpillar Tractor*, 129 Ill. 2d at 62.

Indeed, without explicitly stating so, the court considered the two premises rule exceptions. It first considered whether the claimant's injury occurred as a result of the condition of the employer's premises. After determining that the injury was essentially unexplained because there were no evident defects with the curb, the court turned to the second exception and considered whether the claimant was subjected to a greater degree of risk than the general public because of his employment. It determined that the curb involved in the claimant's accident was no different than any other curb and therefore the claimant was not exposed to any greater risk than other persons. *Caterpil-*

*lar Tractor*, 129 Ill. 2d at 62. In contrast, here, as in the earlier cases, a hazardous condition was present on the surface of employer's parking lot—snow and ice—that caused the claimant's injuries.

■ Employer next attempts to distinguish the earlier cases by arguing that there was no indication in those cases that the parking lots were open to the general public. We decline to read the earlier cases in such a limiting way. Whether a parking lot is used primarily by employees or by the general public, the proper inquiry is whether the employer maintains and provides the lot for its employees' use. If this is the case, then the lot constitutes part of the employer's premises. The presence of a hazardous condition on the employer's premises that causes a claimant's injury supports the finding of a compensable claim. See *Archer Daniels Midland Co.*, 91 Ill. 2d at 216 ("where the claimant's injury was sustained as a result of the condition of the employer's premises, this court has consistently approved an award of compensation").

Our analysis would ordinarily end here. However, in two recent parking lot slip-and-fall cases, this court has analyzed the facts by considering only the second exception to the premises rule. See *Homerding*, 327 Ill. App. 3d 1050; *Wal-Mart Stores, Inc. v. Industrial Comm'n*, 326 Ill. App. 3d 438 (2001). But see *Joiner*, 337 Ill. App. 3d at 815-17 (2003 decision examining both exceptions).

In *Homerding*, the claimant worked as a nail technician for the employer's beauty salon. The salon was located in a strip mall. The mall consisted of several stores and two parking lots, one in front of the stores and one at the rear. The salon had a rear entrance that led to the back lot. The parking lots were owned and maintained by the mall, but the employer's lease obligated the employer to pay a share of the common area costs. The employer's owner asserted that he had no policy regarding where his employees parked their cars. However, the claimant testified that she had been instructed to park in the rear lot.

The claimant arrived at work one morning and parked her car in the back lot. She entered the salon via the back door and began setting up her work station. When she realized that she needed additional supplies that were in her car, the claimant went to her car to retrieve a case. While carrying the case in her left hand, the claimant slipped and fell on some ice about five feet from the employer's door and injured her wrist.

Finding that the claimant sustained injuries arising out of and in the course of her employment with the employer, this court reinstated the arbitrator's award of compensation. *Homerding*, 327 Ill. App. 3d at 1054-55. We noted that, at the time of the accident, the claimant had already begun her workday. As the claimant fell while working,

her injury necessarily arose out of and in the course of her employment. *Homerding*, 327 Ill. App. 3d at 1054. Additionally, we found that the risk of injury to which the claimant was exposed was greater than that of the general public because the claimant was required to park her car in the rear lot that the employer financially contributed to maintain. But for the demands of her job, the claimant would not have needed to make a second trip to her car and negotiate the ice on the lot. *Homerding*, 327 Ill. App. 3d at 1054.

In *Wal-Mart Stores*, the claimant, an employee at the employer's store, slipped on ice in the employer's parking lot on the way to her car and injured her back. The employer maintained only one parking lot, which was used by both employees and customers. Employees were requested, but not required, to park on the south side of the lot so that customers would have better access to the front doors. However, the south side of the lot was not restricted from customer use.

The claimant testified that she had left the store at 8:30 p.m. for a meal break. As she walked to her car, her feet came out from underneath her and she hit the ground. On cross-examination, the claimant testified that she had not driven herself to work that day. Rather, a friend was waiting to pick up the claimant in the claimant's car when the claimant fell in the lot. The friend, who was not a Wal-Mart employee, waited in the car in the section of the lot in which employees were encouraged to park. However, two Wal-Mart employees testified that claimant had told them that she fell in the parking lot of her apartment building.

The Commission awarded the claimant compensation, and the circuit court confirmed the decision. On appeal, this court reversed the Commission's finding. We noted that the entire Wal-Mart parking lot was available for use by both employees and customers and that the claimant had not parked her own car in the lot on the night of her accident. Additionally, the claimant's friend was not a Wal-Mart employee, and there was no evidence that anyone had asked her to park where she did. We concluded that the claimant's fall resulted from a hazard to which she and the general public were equally exposed. Accordingly, her injury did not arise out of her employment. *Wal-Mart Stores*, 326 Ill. App. 3d at 444-45.

■ We find *Wal-Mart Stores* distinguishable. There, the claimant was not walking to or from her parked car, but was being picked up by a friend. There was no evidence that anyone had asked the claimant's friend to park where she did. Thus, the claimant was, in a sense, not acting under the employer's control or restrictions when she left the store to go on break and so could not have faced any risks to a greater

extent than those of the general public. In contrast, here, as in *Homerding*, claimant parked her car before the start of her shift in an area designated by employer for employee parking. Although the general public was free to park anywhere in the lot, claimant's choices were restricted. Therefore, claimant's exposure to risk was necessarily greater than that of the general public.

We disagree with employer's contention that the presence of snow and ice in the entire lot compels the conclusion that claimant did not face any risks to a greater extent than other persons. By restricting where claimant could park her vehicle, the employer exercised control over its employees' actions. In this way, the employee faced risks to a greater extent than the general public.

■ Employer's final argument is that this court would be implicitly adopting the positional-risk doctrine if we hold that claimant's injuries arose out of her employment with employer. The doctrine, which has been rejected by our supreme court (*Brady v. Louis Ruffolo & Sons Construction Co.*, 143 Ill. 2d 542, 552-53 (1991)), states that an injury arises out of the employment if it would not have occurred but for the fact that the conditions or obligations of the employment placed the claimant in the position where he or she was injured by a neutral force. *Brady*, 143 Ill. 2d at 552. A neutral force is a force neither personal to the claimant nor distinctly associated with the employment. *Brady*, 143 Ill. 2d at 552. We need not address employer's argument at length because claimant's fall resulted from a hazardous condition on employer's premises. In other words, her fall resulted from an employment-related risk and not a neutral force. See *Elliot v. Industrial Comm'n*, 153 Ill. App. 3d 238, 242 (1987) (unexplained falls result from a neutral origin). Accordingly, the positional-risk doctrine is irrelevant.

We conclude that the Commission's decision was against the manifest weight of the evidence.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Will County is affirmed, and the cause is remanded to the Commission pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 332-35 (1980).

Affirmed; cause remanded.

McCULLOUGH, P.J., and HOFFMAN, HOLDRIDGE, and GOLDENHERSH, JJ., concur.