LITCHFIELD HEALTHCARE CENTER, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Gretchen Newingham, Appellee).

Fifth District (Industrial Commission Division)    No. 5—03—0632WC

Opinion filed June 9, 2004.—Rehearing denied July 22, 2004.

Dennis S. O'Brien, of Livingstone, Mueller, O'Brien & Davlin, P.C., of Springfield, for appellant.

Kathy A. Olivero, of Kanoski & Associates, of Springfield, for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

Litchfield Healthcare Center (Litchfield) appeals from an order of the circuit court reversing a decision of the Industrial Commission (Commission), denying the claimant, Gretchen Newingham, benefits under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2000)). For the reasons that follow, we affirm.

The following factual recitation is taken from the evidence adduced at the arbitration hearing.

Litchfield operates a residential health care facility in a two-story building located at 1285 Union Street in Litchfield, Illinois. It is the sole occupant of the building, which is bordered by parking areas on the east, west, and north sides, and has sidewalks running from the parking areas to doors located on each of the three sides. Litchfield maintained the building and the surrounding areas.

The claimant began working for Litchfield as a certified nursing assistant on May 25, 2000. Her duties consisted of giving snacks and drinks to the residents, giving the residents showers, and preparing them for bed.

The claimant testified that, when she began working for Litchfield, a secretary named Donna Able "suggested" that she park her car in the north parking lot. The north parking lot was also used by visitors to the facility. The claimant admitted that, on occasion, she would park in the west parking lot when the north lot was full.

On September 24, 2000, the claimant arrived at Litchfield's facility approximately 10 minutes before her 2 p.m. shift was to begin. According to the claimant, she parked in the north parking lot and walked to the entrance door on the north side of the building. Upon entering, she punched in at the time clock located immediately inside of the door. After punching in, the claimant realized that she had forgotten her "gait belt" in her car. A gait belt is a device used to hold

a resident as he or she is being lifted. The claimant testified that she was required to have a gait belt and she could be disciplined if she did not have it.

The claimant exited the building and returned to her car. After retrieving the belt, she began walking back to the building with another certified nursing assistant who had arrived for work. In describing the events that followed, the claimant stated:

> "She [the other certified nursing assistant] come [*sic*] walking up next to me. We both stepped up onto the sidewalk and she kind of invaded my space a little so I kind of stepped off the edge of the sidewalk and she moved and I got back on the sidewalk and I took a couple of steps and as I—when I was walking where the concrete is not level with each other, I started to trip on that part of the sidewalk, and as I started to fall, I tried to grab her so I wouldn't totally fall and when I tried to catch myself with my left foot, that's when I rolled my ankle off the sidewalk."

The claimant suffered a "severe ankle and foot sprain" but did not sustain a fracture or dislocation.

The claimant was treated at St. Francis Hospital's emergency room on the day of her fall. Thereafter, the claimant underwent conservative treatment and physical therapy. On February 12, 2001, the claimant underwent surgery to repair ligaments around her left ankle. She was off work from the date of her injury until the arbitration hearing on March 9, 2001.

Following a section 19(b) (820 ILCS 305/19(b) (West 2000)) hearing, the arbitrator found that the claimant sustained accidental injuries arising out of and in the scope of her employment and that her condition of ill-being is causally related to those injuries. The arbitrator awarded the claimant temporary total disability (TTD) benefits for a period of $23^5/_7$ weeks and ordered Litchfield to pay $8,202.14 for necessary medical expenses incurred by the claimant.

Litchfield sought a review of the arbitrator's decision before the Commission. In a decision with one commissioner dissenting, the Commission reversed the arbitrator's decision, holding that the claimant failed to prove that she sustained an accidental injury arising out of and in the course of her employment, and denied her any benefits under the Act. The majority found that there was no evidence to show either that Litchfield restricted the method by which the claimant entered or exited its building or that she was subjected to a risk uncommon to the general public or to a greater degree than the general public. The majority acknowledged that the claimant had "clocked in" prior to the incident, but noted that she had not yet begun to work.

The dissenting commissioner observed that the claimant was injured after she had clocked in and as she was returning from retrieving a "tool" that she was required to have for her job. Based on those facts, the dissenting commissioner held that the majority had erroneously determined that the claimant had not yet begun to work at the time of her injury. The dissenting commissioner concluded that the claimant was in the course of her employment and engaged in an activity incidental thereto at the time of her injury and was placed at an increased risk of harm because she was exposed to the defect in the sidewalk more frequently than the general public.

The claimant sought judicial review of the Commission's decision in the circuit court of Montgomery County. The circuit court, following the reasoning of the dissenting commissioner, reversed the decision of the Commission and reinstated the arbitrator's findings and award. Litchfield filed the instant appeal.

■ In a workers' compensation case, the claimant has the burden of establishing, by a preponderance of the evidence, that her injury arose out of and in the course of her employment. *O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253, 403 N.E.2d 221 (1980). The determination of whether an injury arose out of and in the course of a claimant's employment is a question of fact for the Commission to resolve, and its finding in that regard will not be set aside on review unless it is against the manifest weight of the evidence. *Knox County YMCA v. Industrial Comm'n*, 311 Ill. App. 3d 880, 885, 725 N.E.2d 759 (2000). For a finding of fact to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291, 591 N.E.2d 894 (1992).

■ An employee's injury is compensable under the Act only if it arises out of and in the course of the employment. 820 ILCS 305/2 (West 2000). Both elements must be present at the time of the claimant's injury in order to justify compensation. *Illinois Bell Telephone Co. v. Industrial Comm'n*, 131 Ill. 2d 478, 483, 546 N.E.2d 603 (1989). "Arising out of the employment" refers to the origin or cause of the claimant's injury. As the supreme court held in *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 58, 541 N.E.2d 665 (1989):

> "For an injury to 'arise out of' the employment its origin must be in some risk connected with, or incidental to, the employment so as to create a causal connection between the employment and the accidental injury. [Citations.] Typically, an injury arises out of one's employment if, at the time of the occurrence, the employee was performing acts he was instructed to perform by his employer, acts

which he had a common law or statutory duty to perform, or acts which the employee might reasonably be expected to perform incident to his assigned duties. [Citation.] A risk is incidental to the employment where it belongs to or is connected with what an employee has to do in fulfilling his duties. [Citations.]"

■ "In the course of the employment" refers to the time, place, and circumstances under which the claimant is injured. *Scheffler Greenhouses, Inc. v. Industrial Comm'n*, 66 Ill. 2d 361, 366, 362 N.E.2d 325 (1977). Injuries sustained on an employer's premises, or at a place where the claimant might reasonably have been while performing her duties, and while a claimant is at work, or within a reasonable time before and after work, are generally deemed to have been received in the course of the employment. *Caterpillar Tractor Co.*, 129 Ill. 2d at 57.

In this case, the claimant was injured on Litchfield's premises and, as the dissenting commissioner correctly observed, after she had clocked in and was in the process of retrieving a tool needed to perform her job. We believe, therefore, that the claimant's injuries were sustained in the course of her employment. Our focus now is on the question of whether the claimant's injuries arose out of her employment.

■ There are three categories of risk to which an employee may be exposed; namely: (1) risks distinctly associated with her employment; (2) personal risks; and (3) neutral risks which have no particular employment or personal characteristics. *Illinois Institute of Technology Research Institute v. Industrial Comm'n*, 314 Ill. App. 3d 149, 162, 731 N.E.2d 795 (2000). In this case, the claimant tripped on an uneven sidewalk. The risk of such an event is not distinctly associated with her employment, nor is it personal to her. The risk of tripping on a sidewalk is a neutral one. Consequently, the question of whether the claimant's injury arose out of her employment rests on a determination of whether she was exposed to a risk of injury to a greater extent than that to which the general public was exposed. *Illinois Institute of Technology*, 314 Ill. App. 3d at 163. The Commission found that she was not. We disagree.

■ As the Commission correctly noted, the claimant was not required to park in the north parking lot, it was only "suggested" that she do so. This fact distinguishes this case from the circumstances present in *Homerding v. Industrial Comm'n*, 327 Ill. App. 3d 1050, 765 N.E.2d 1064 (2002). However, unlike the circumstances present in *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 541 N.E.2d 665 (1989), the case relied upon by the Commission, this case does not merely involve the risks inherent in walking on a sidewalk which confront all members of the public.

The claimant testified that she tripped on an area of the sidewalk where the slabs of concrete were "not level with each other." She identified an exhibit which showed one slab of concrete higher than the adjoining slab and testified that the difference in height was approximately 1¼ inches. The Commission, however, found that there "was no defect or hazard in the sidewalk." In light of the claimant's uncontradicted testimony on this issue and the concession by Litchfield's attorney during oral argument that the photographic exhibits "show varying heights" in the adjoining sidewalk slabs, we believe the Commission's finding of no defect or hazard in the sidewalk to be against the manifest weight of the evidence.

Unlike the curb in *Caterpillar Tractor Co.*, which was not a contributing cause of the claimant's injury (see *Caterpillar Tractor*, 129 Ill. 2d at 61), the sidewalk involved in the claimant's injury in this case was uneven and defective. As the dissenting commissioner reasoned, the claimant was exposed to the defective sidewalk and the risk of tripping thereon more frequently than members of the general public. Her regular use of the north parking lot at the suggestion of Litchfield exposed her to the defective sidewalk to a degree beyond that to which the general public would be subjected. See *Fligelman v. City of Chicago*, 275 Ill. App. 3d 1089, 1094-95, 657 N.E.2d 24 (1995).

When, as in this case, an injury to an employee takes place in an area that is the usual route to the employer's premises, and the route is attendant with a special risk or hazard, the hazard becomes part of the employment. Special hazards or risks encountered as a result of using a usual access route satisfy the "arising out of" requirement of the Act. See *Bommarito v. Industrial Comm'n*, 82 Ill. 2d 191, 195, 412 N.E.2d 548 (1980); see also *Mores-Harvey v. Industrial Comm'n*, 345 Ill. App. 3d 1034, 1040, 804 N.E.2d 1086 (2004). It is for these reasons that we find that the claimant's injury in this case arose out of her employment.

Although we are reluctant to find that a factual determination of the Commission is against the manifest weight of the evidence, we will not hesitate to do so when the clearly evident, plain, and indisputable weight of the evidence compels an opposite conclusion. *Montgomery Elevator Co. v. Industrial Comm'n*, 244 Ill. App. 3d 563, 567, 613 N.E.2d 822 (1993). Based upon the foregoing analysis, we find the Commission's determination that the claimant failed to prove that she sustained an accidental injury arising out of and in the course of her employment to be against the manifest weight of the evidence.

Accordingly, we affirm the judgment of the circuit court reversing

the Commission's decision and reinstating the award of the arbitrator, and remand the matter to the Commission.

Affirmed and remanded to the Industrial Commission.

CALLUM and GOLDENHERSH, JJ., concur.

PRESIDING JUSTICE McCULLOUGH, dissenting:
I respectfully dissent.

I suggest that the majority is simply reweighing the evidence that was presented to the Commission. The majority bases its decision solely upon the testimony of the claimant and a concession by the respondent's attorney during oral argument that the photographic exhibits do show varying heights.

The Commission in its decision stated that it had "reviewed the exhibits, PX7, RX1 and RX2, the photographs of the sidewalk, along with petitioner's medical histories, and finds there was no defect or hazard in the sidewalk." The Commission also stated, "More specifically, the Commission finds that Petitioner provided significantly varying accounts of the incident in her medical histories." And the Commission further stated that "in her contemporary medical records, Petitioner indicated that she twisted her ankle on the sidewalk, twisted her ankle in a big hole in the ground, and slipped off the edge of the sidewalk." The Commission also noted that the testimony of the claimant at the time of arbitration differed from her medical records and further found that when petitioner was asked to review PX7, "she testified that it accurately portrayed the sidewalk as it was on the date of the incident." She did not mark on the photograph where the incident occurred, whether the sidewalk was dry, whether there were any holes, obstructions or rocks on the pavement.

I agree with the majority in their reference to *Bommarito* that "[s]pecial hazards or risks encountered as a result of using a usual access route satisfy the 'arising out of' requirement of the Act." 349 Ill. App. 3d at 491. In this case, there is simply no proof that there was a special hazard or risk encountered.

The record shows that the photographic exhibits are not helpful to this court in its determination of the appeal. Other than the testimony of the claimant, which was discounted by the Commission, there is no basis for recovery.

The trial court's order should be reversed and the decision of the Industrial Commission reinstated.

HOLDRIDGE, J., joins in this dissent.