# Illinois Official Reports

## Appellate Court

*Brais v. Illinois Workers' Compensation Comm'n*,
2014 IL App (3d) 120820WC

| | |
|---|---|
| Appellate Court Caption | JANE R. BRAIS, Appellant, v. THE ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (County of Kankakee, Circuit Clerk's Office, Appellees). |
| District & No. | Third District<br>Docket No. 3-12-0820WC |
| Filed | May 8, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings in a workers' compensation action arising from the wrist injury claimant suffered when she tripped on a defective sidewalk at an entrance to the courthouse where she worked, the trial court's judgment confirming the arbitrator's decision that claimant's injuries did not arise out of her employment was reversed and the cause was remanded to the Illinois Workers' Compensation Commission, since claimant was returning to work from a meeting she had to attend in a nearby building as part of her work, the cracked sidewalk was a special hazard, it was a contributing cause of claimant's injury, the door claimant intended to enter in order to get to her office was the only entrance that was open at the time she fell, and the hazard of using the sidewalk was a part of her employment, regardless of the fact that the public faced the same hazard, but her risk was greater than that of the general public due to the demands of her employment; therefore, based on the evidence, the only reasonable inference was that claimant's injuries arose out of her employment. |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 10-MR-650; the Hon. James B. Kinzer, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Matthew T. Gubbins, of Regas, Gubbins & Regas, of Kankakee, for appellant. |
| | Jennifer L. Rizk and Michael E. Rusin, both of Rusin, Maciorowski & Friedman, Ltd., of Chicago, for appellee. |
| Panel | JUSTICE STEWART delivered the judgment of the court, with opinion. |
| | Presiding Justice Holdridge and Justices Hoffman and Hudson concurred in the judgment and opinion. |
| | Justice Harris specially concurred, with opinion. |

**OPINION**

¶ 1    The claimant, Jane R. Brais, filed an application for adjustment of claim against her employer, the Kankakee County circuit clerk's office, seeking workers' compensation benefits for an injury to her left wrist she allegedly sustained at work on December 20, 2006. The claim proceeded to an arbitration hearing under the Workers' Compensation Act (the Act) (820 ILCS 305/1 *et seq*. (West 2006)). The arbitrator found that the claimant failed to meet her burden of proving that she sustained accidental injuries which arose out of and in the course of her employment.

¶ 2    The claimant appealed to the Illinois Workers' Compensation Commission (Commission), which affirmed and adopted the decision of the arbitrator. The claimant filed a timely petition for review in the circuit court of Kankakee County. The circuit court confirmed the Commission's decision, and the claimant appealed.

¶ 3                                 BACKGROUND

¶ 4    The following factual recitation is taken from the record and the evidence presented at the arbitration hearing.

¶ 5    The claimant began working for the employer as a child support coordinator on April 15, 2002. Her office is located in the Kankakee County courthouse. The claimant testified that on December 20, 2006, at about 11 a.m., she was returning to her office from a work-related meeting at the administration building. The administration building is about two blocks from the courthouse. Typically, employees enter the courthouse through an employee entrance at the back of the courthouse. The employee entrance is locked at 9:30 a.m., so the claimant had to enter through the front door to the courthouse. The claimant testified that she took that path

every day. She was wearing two-inch high heels and, when she was less than two feet from the stairs leading to the front entrance to the courthouse, her heel caught in a defect in the sidewalk and she fell. She described the sidewalk where she fell as having huge cracks, being broken up, and "you could pretty much see the gravel that they put down underneath the concrete." The claimant stated that there was a one-half to a one-inch difference in the level between the smooth concrete leading up to the crumbled concrete. The claimant struck her left wrist and right knee when she fell. She felt a sharp pain in her wrist.

¶ 6 The claimant entered the courthouse and told her department head, Circuit Clerk Kathy Thomas, about the accident. Ms. Thomas took her to the emergency room at Provena St. Mary's Hospital. The claimant had an X-ray of her left wrist. Dr. Robert Marshall wrote that the X-rays showed arthritic changes throughout the wrist mainly on the radial side of the wrist and a lineal lucency through the proximal scaphoid. The claimant was seen at Provena St. Mary's Hospital on December 22, 2006, January 2, 2007, and January 9, 2007. She was diagnosed with a left wrist scaphoid fracture and referred to Dr. Muhammad.

¶ 7 Dr. Kermit Muhammad started treating the claimant on January 5, 2007. X-rays were taken. Dr. Muhammad wrote in his patient notes that the X-rays showed that the claimant had a left proximal pole scaphoid fracture, nondisplaced, of her left wrist. He examined her again on February 2, 2007, March 2, 2007, April 13, 2007, and June 1, 2007. During this time, the claimant was treated with a wrist brace, a bone stimulator, and physical therapy. On July 17, 2007, Dr. Muhammad examined the claimant and noted that her left wrist had a persistent lucency and fracture line. He referred her to Dr. John Fernandez.

¶ 8 Dr. John Fernandez examined the claimant on August 9, 2007. He diagnosed her with scaphoid nonunion with avascular necrosis and early dorsal intercalated segment instability. He recommended either a left wrist total fusion, a left wrist scaphoid excision with partial fusion, or a left wrist proximal row carpectomy.

¶ 9 On March 14, 2008, Dr. Fernandez performed a left wrist total fusion with proximal row carpectomy and scaphoid excision, and a left carpal tunnel release on the claimant. He wrote that multiple X-ray views of the left hand and wrist revealed excellent alignment of the fusion plate. He referred her for therapy.

¶ 10 On July 9, 2008, Dr. Fernandez examined the claimant. He wrote in his patient notes that multiple X-rays of the left wrist revealed a successful fusion with no hardware migration or failure. He advised that she could discontinue her supervised therapy and engage in a home program on her own. He wrote that she was currently at maximum medical improvement. He permanently restricted her to "light use in the 10- to 15-pound range without significant exposure to repetition beyond 2 to 3 hours total in a day without significant use of tools." He noted that in the future the claimant may require removal of the deep hardware, including the plate and screws.

¶ 11 On March 4, 2009, at the employer's request, the claimant underwent an independent medical evaluation with Dr. Charles Carroll IV. He diagnosed her with scaphoid fracture with avascular necrosis which necessitated fusion. He found that her treatment had been reasonable and necessary and that it related to her industrial injury. He found that she had reached maximum medical improvement and he agreed with her 15-pound lifting restriction. Dr. Carroll opined that hardware removal was not required at that time.

¶ 12 At the time of the arbitration hearing, all the medical bills incurred as a result of the claimant's medical treatment had been paid. The claimant testified that the employer had

accommodated all of the work restrictions placed on her by her physician and that she did not lose time from work due to her injury. She stated that she is working in the same position as prior to her injury.

¶ 13    The claimant testified that, at the time of the arbitration hearing, the sidewalks in front of the courthouse had been replaced. After her fall, she spoke before the safety committee about the condition of the sidewalk. She stated that the area where she fell was specifically addressed in safety meetings after December 20, 2006, and the issue was discussed until the county had the funds to make the repairs.

¶ 14    The arbitrator found that the claimant did not sustain injuries that arose out of and in the course of her employment. He found that the claimant's accident occurred when she was walking along a public pathway going into the county courthouse. In doing so, she was not subjected to a risk to which the general public is not exposed or that was peculiar to her work. He found that the risk to the claimant which caused her injuries was no greater to her than to the general public.

¶ 15    The claimant sought review of the arbitrator's decision. The Commission affirmed and adopted the arbitrator's decision. The claimant appealed the Commission's decision to the circuit court. Following a hearing, the circuit court confirmed the Commission. The claimant filed a timely notice of appeal.

¶ 16                                    ANALYSIS

¶ 17    The claimant argues that the Commission erred in its determination that her wrist injury did not arise out of and in the course of her employment.

¶ 18    To be compensable under the Act, an injury must be one "arising out of and in the course of the employment." 820 ILCS 305/2 (West 2006). "An injury is sustained 'in the course' of employment when it occurs during employment, at a place where the worker may reasonably perform employment duties *** or engage[ ] in some incidental employment duties." *Baggett v. Industrial Comm'n*, 201 Ill. 2d 187, 194, 775 N.E.2d 908, 912-13 (2002). An injury "arises out of" one's employment if it originates from a risk connected with, or incidental to, the employment, so as to create a causal connection between the employment and the accidental injury. *Id*. at 194, 775 N.E.2d at 912. "Typically, an injury arises out of one's employment if, at the time of the occurrence, the employee was performing acts he or she was instructed to perform by the employer, acts which he or she had a common law or statutory duty to perform, or acts which the employee might reasonably be expected to perform incident to his or her assigned duties." *Homerding v. Industrial Comm'n*, 327 Ill. App. 3d 1050, 1054, 765 N.E.2d 1064, 1068 (2002). "A risk is incidental to the employment where it belongs to or is connected with what an employee has to do in fulfilling his duties." *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 58, 541 N.E.2d 665, 667 (1989).

¶ 19    Generally whether a claimant's injury arose out of or in the course of her employment is a question of fact for the Commission, and its determination will not be disturbed on review unless it is against the manifest weight of the evidence. *Nascote Industries v. Industrial Comm'n*, 353 Ill. App. 3d 1056, 1059-60, 820 N.E.2d 531, 534 (2004). However, when the facts are undisputed and susceptible to only one single inference, the question is one of law and is subject to *de novo* review. *Id*.

¶ 20　　　　In the instant case, the facts are undisputed. The claimant was the only witness to testify at the hearing. Her undisputed testimony established that on December 20, 2006, at around 11 a.m., she was walking back from a meeting at the administration building; she was walking up the sidewalk toward the steps leading to the front entrance to the courthouse; she takes that path every day; normally she enters the courthouse through the employee entrance at the back of the courthouse; the employee entrance is locked at 9:30 a.m., so she had to enter through the front entrance; as she was approaching the steps to the courthouse, her heel caught in the broken and cracked sidewalk causing her to fall and injure her wrist; the concrete was not level with adjacent concrete slabs; and at the time of the arbitration hearing, the sidewalk had been replaced. The employer did not dispute any of this evidence.

¶ 21　　　　The employer argues that whether the claimant was exposed to a special risk or hazard requires the court to draw an inference from the facts, and therefore, this matter involves a question of fact and should be subject to the manifest-weight-of-the-evidence standard. The claimant argues that the undisputed facts are susceptible to a single inference, and therefore, the Commission's decision should be reviewed *de novo*. We agree with the claimant.

¶ 22　　　　"In the course of" the employee's employment refers to the time, place, and circumstances under which she is injured. *Litchfield Healthcare Center v. Industrial Comm'n*, 349 Ill. App. 3d 486, 490, 812 N.E.2d 401, 405 (2004). Injuries sustained on an employer's premises, or at a place where the claimant might reasonably have been performing her duties, and while a claimant is at work, are generally deemed to have been received in the course of the employment. *Id*. In the instant case, the claimant had begun her workday and was injured when returning to her office from a work-related meeting in another building. The claimant's injury was sustained in the course of her employment. Thus the sole issue is whether the claimant's injury arose out of her employment.

¶ 23　　　　The instant case is similar to the line of cases that involve injuries to the claimant resulting from exposure to a special hazard. In *Bommarito v. Industrial Comm'n*, 82 Ill. 2d 191, 412 N.E.2d 548 (1980), the claimant was walking from her car, down one of the four entrances to the two alleyways which led to her employer's rear door when she stepped in a hole and fell, fracturing her left elbow and spraining her right ankle and right wrist. *Id*. at 193-94, 412 N.E.2d at 549. All employees were required to enter and exit the building through the rear door. *Id*. The court examined whether the claimant sustained injuries arising out of and in the course of her employment. The court observed that when an injury occurs "in an area which is the sole or usual route to the employer's premises, and the route is attendant with a special risk or hazard, the hazard becomes part of the employment." (Emphasis omitted.) *Id*. at 195, 412 N.E.2d at 550. The court held that the special risks or hazards encountered by the claimant, as a result of her employer's order to enter through the rear door only, arose out of her employment. *Id*. at 196, 412 N.E.2d at 551. It further held that the claimant's obedience to the employer's order placed her consequent injuries within the course of her employment because had she not obeyed, she could not have gained admittance to her place of employment. *Id*.

¶ 24　　　　In *Litchfield Healthcare Center* the claimant, after punching the time clock to start work, returned to her car to get some equipment. *Litchfield Healthcare Center*, 349 Ill. App. 3d at 487-88, 812 N.E.2d at 403. She testified that she would be disciplined if she did not have the equipment. *Id*. at 488, 812 N.E.2d at 403. When walking back from her car, the claimant tripped on uneven concrete and rolled her ankle off the sidewalk. *Id*. She suffered from a severe ankle and foot sprain. *Id*. The court examined whether the claimant's injuries arose out

of her employment. The court found that the claimant was exposed to a defective sidewalk and that her regular use of the north parking lot at the suggestion of her employer exposed her to the defective sidewalk to a degree beyond that to which the general public would be subjected. *Id*. at 491, 812 N.E.2d at 406. The court held that when "an injury to an employee takes place in an area that is the usual route to the employer's premises, and the route is attendant with a special risk or hazard, the hazard becomes part of the employment." *Id*. The court held that the "arising out of" requirement of the Act is satisfied when special hazards or risks are encountered as a result of using a usual access route. *Id*.

¶ 25 In *Metropolitan Water Reclamation District of Greater Chicago v. Illinois Workers' Compensation Comm'n*, 407 Ill. App. 3d 1010, 944 N.E.2d 800 (2011), the claimant stumbled while walking up an inclined driveway with a six-inch "dip" on her way to make a job-related bank deposit. *Id*. at 1011-12, 944 N.E.2d at 802. She fractured both her wrists. *Id*. at 1012, 944 N.E.2d at 802. The sole issue on review was whether the claimant's injuries arose out of her employment. The court held that "[u]nder the 'street risk' doctrine, where the evidence establishes that the claimant's job requires that she be on the street to perform the duties of her employment, the risks of the street become one of the risks of the employment, and an injury sustained while performing that duty has a causal relation to her employment." *Id*. at 1014, 944 N.E.2d at 804. The court found that there was undisputed evidence that the claimant had to traverse the public streets and sidewalks to make bank deposits for her employment and that the hazards and risks inherent in the use of the street became the risks of her employment. *Id*. at 1015, 944 N.E.2d at 804. It held that the "dip" in the driveway was a hazard and that while the public also faced a risk of tripping and falling on such a hazard, the claimant, by virtue of her employment, was exposed to the risk to a greater degree than the general public. *Id*. at 1015, 944 N.E.2d at 804-05. The court found that the claimant's injuries arose out of and in the course of her employment and, as a consequence, she was entitled to benefits under the Act. *Id*. at 1015, 944 N.E.2d at 805.

¶ 26 The employer argues that the instant case is more analogous to *Caterpillar*. In *Caterpillar*, the claimant completed his shift, left the building through doors normally used by the employees, walked 30 feet toward his car in the employee parking lot, and stepped off the curb onto the driveway. *Caterpillar*, 129 Ill. 2d at 56-57, 541 N.E.2d at 666. There was a slight cement slope between the curb and the driveway, and when the claimant stepped off the curb his right foot landed half on the cement incline and half on the driveway. *Id*. The claimant twisted his ankle. *Id*. The driveway was on the employer's premises and was used by employees and the general public. *Id*. There was no evidence of holes, rocks, or obstructions on the pavement. *Id*. The supreme court examined whether the claimant's injuries arose out of his employment. It found that the condition of the premises was not a contributing cause of the claimant's injury. *Id*. at 61, 541 N.E.2d at 668. The court further found that "[c]urbs, and the risks inherent in traversing them, confront all members of the public." *Id*. at 62, 541 N.E.2d at 669. The court found that while the claimant regularly crossed the curb to reach his car, there was nothing in the record to distinguish the curb from any other curb. *Id*. at 63, 541 N.E.2d at 669. The court held that the claimant's injury did not arise out of his employment because the injury resulted from a risk which is presented to the general public. *Id*. at 62, 541 N.E.2d at 669.

¶ 27 The instant case is distinguishable from *Caterpillar*. In the instant case, there was a special hazard. The sidewalk was cracked and uneven. In *Caterpillar*, there was no evidence of a

defect and the court specifically found that the curb was like any other curb. The court in *Caterpillar* further found that the condition of the premises was not a contributing cause of the claimant's injury. The cracked sidewalk was a contributing cause of the claimant's injury as her heel caught on the defective sidewalk causing her to fall.

¶ 28    Because the instant case involves a special hazard, it is analogous to *Bommarito*, *Litchfield Healthcare Center*, and *Metropolitan Water Reclamation District of Greater Chicago*. The claimant's presence on the sidewalk approaching the steps to the courthouse's front door was occasioned by the demands of her employment, which required her to attend a meeting in the administration building two blocks from her office. Her attendance at the meeting was for the benefit and accommodation of her employer. As in *Bommarito*, the claimant did not freely choose a certain route. It is undisputed that the employee door was locked at 9:30 a.m. As a result, the front door was the only access point to the courthouse at the time of the claimant's accident. The claimant testified that she took this route daily. It does not matter that the general public used the same sidewalk and faced the same hazard. When an employee is injured in an area which is the sole or usual route to the employer's premises, and there is a special risk or hazard on the route, the hazard becomes part of the employment. *Litchfield Healthcare Center*, 349 Ill. App. 3d at 491, 812 N.E.2d at 406. The special hazards or risk encountered as a result of using the sole or usual access route satisfy the arising out of requirement of the Act. *Id*. Here, the front entrance to the courthouse was not only a *usual* access route for the claimant, it was her *sole* route since the employee entrance was locked. Because of the demands of the claimant's job that she attend meetings at the administration building, her risk of injury on the defective sidewalk was greater than that of the general public. See *Metropolitan Water Reclamation District of Greater Chicago*, 407 Ill. App. 3d at 1015, 944 N.E.2d at 804-05; *Litchfield Healthcare Center*, 349 Ill. App. 3d at 491, 812 N.E.2d at 406.

¶ 29    This case does not merely involve the risks inherent in walking on a sidewalk which confront all members of the public. This case involves a cracked and defective sidewalk which was a contributing cause of the claimant's injury. Because the claimant encountered a special hazard or risk as a result of using a sole or usual access route, her injury arose out of her employment. Application of the existing case law to the undisputed facts in this case reveals that the only reasonable inference that can be drawn from the evidence is that the claimant's injuries arose out of her employment.

¶ 30                                          CONCLUSION

¶ 31    For the foregoing reasons, the judgment of the circuit court confirming the decision of the Commission is reversed, the decision of the Commission is reversed, and this cause is remanded to the Commission for further proceedings.

¶ 32    Reversed and remanded.

¶ 33    JUSTICE HARRIS, specially concurring.

¶ 34    I agree with the result reached by the majority. I write separately because while I agree the evidence establishes the claimant's injury was sustained in an area which was the *sole* route to her employer's premises, it does not establish the area was also her *usual* route. The claimant did not normally use the main entrance located at the front of the courthouse and, instead

usually entered the building through a rear entrance reserved for use by employees. Thus, the evidence does not establish the claimant was using her usual route to access the courthouse at the time of her fall. However, the claimant does not have to prove it was both the sole *and* usual route. Given that *Bommarito* supports compensability if the injury occurs along the sole *or* usual route, the claimant here is able to satisfy the "in the course of" requirement as the testimony was undisputed her injury occurred while attempting to access the only open entrance to the courthouse. See *Bommarito*, 82 Ill. 2d at 195, 412 N.E.2d at 550.